JOHN R. MOSTER *v.* LOURINA BOWER, ADMINISTRATRIX OF THE ESTATE OF ALVA W. BOWER, DECEASED.

[No. 871A167. Filed August 24, 1972. Rehearing denied September 26, 1972. Transfer denied January 15, 1973.]

*Ricos, Wade & Price,* of Indianapolis, *Humbert & Fitch,* of Greensburg, *Morris L. Klapper,* of Indianapolis, for appellant.

*Hubert E. Wickens, Don Hubert Wickens, W. Michael Wilke,* of Greensburg, *Thompson & Jones,* of counsel, of Columbus, for appellee.

LOWDERMILK, J.—This case is an appeal under common law negligence; the question of whether the court properly directed the defendant's verdict in the case comes to rest on whether or not there was any evidence or a reasonable inference or inferences that the decedent failed to exercise reasonable care for the safety of others.

The parties stipulated before trial that the plaintiff-appellant incurred $5,846.40 in medical bills which were admissible without proof of their reasonableness or the necessity thereof; $4,000.00 in loss of wages; and that an explosion occurred on February 26, 1968, at Thompson's Sporting Goods Store in Columbus, Indiana. They further stipulated that Lourina Bower was the duly appointed, qualified and acting Administratrix of the estate of Alva W. Bower, deceased, pursuant to the appointment of the Decatur Circuit Court, Alva W. Bower having died on February 26, 1968.

That at all times mentioned in plaintiff's complaint he was employed as a clerk in a retail store located at 1017 Third Street, Columbus, Indiana, known and described as Thompson's Sporting Goods Store; that on February 26, 1968, at about 8:20 A.M. plaintiff was performing his duties as clerk in said store. He was 31 years of age and had a life expectancy of 39.36 years.

In addition to the stipulated facts the other facts are that plaintiff-appellant worked as a clerk in a retail store which had no basement thereunder and that there was an explosion and fire which caused him injury. That the body of Alva W. Bower (defendant-appellee's decedent) was found in the debris of the store after the explosion and fire.

The store was a retail sporting goods establishment and at the moment of the tragedy contained 500,000 shot gun

shell primers stacked near the entrance, plus about fifty pounds of gunpowder.

As the result of a fire and explosion the store building was completely demolished and Alva W. Bower, a customer in the store, was killed and the plaintiff-appellant was critically injured, but managed to get out of the store building under his own power.

The question of res gestae was paramount in the trial of the cause and remains so in this appeal and although this opinion may seem overburdened with statements as to time, we are of the opinion that it is necessary to show all available elements as to the time intervening between certain happenings immediately prior to the explosion and fire and immediately after so that it may be judicially determined if certain statements made were a part of the res gestae.

At this time we also wish to point out that the other and very important question which we must pass upon in this opinion is whether or not the Dead Mans Statute, the same being Ind. Ann. Stat. § 2-1715 (Burns 1968 Replacement), is applicable in the case at bar.

The pertinent parts of said statute read as follows, to-wit:

> "In suits or proceedings in which an executor or adminis-
> trator is a party, involving matters which occurred during
> the lifetime of the decedent, where a judgment or allowance
> may be made or rendered for or against the estate repre-
> sented by such executor or administrator; any person who
> is a necessary party to the issue or record, whose interest is
> adverse to such estate, shall not be a competent witness as
> to such matters against such estate: . . ."

On the day and time in question plaintiff-appellant, John R. Moster, and Albert Ray Baldwin, were employed in said store, which was owned by Robert Thompson.

A Mr. Sawyer entered the store on the day in question to make a purchase and while in the store another man came into the store and inquired about a rifle scope and then went outside and came back into the store with a gun in his hand

as Mr. Sawyer was leaving. Mr. Sawyer was of the opinion the gun was a .22 rifle. Mr. Sawyer continued to his car and was in the same when the explosion occurred with sufficient violence that the hood of his car blew up. He testified that the explosion occurred fifteen seconds after he passed the man with the rifle who was re-entering the store.

Mr. Robert Thompson, proprietor of the store, testified the 500,000 shot shell primers were stacked inside the store near the entrance on the east wall two days before the explosion and remained there until the explosion. Mr. Thompson further testified he was driving to work on the morning in question and heard the explosion and saw the smoke. He parked his truck about fifteen seconds later and ran to the store while the debris was exploding into the air and coming down. When Mr. Thompson got to the store he saw the plaintiff-appellant about twelve feet away trying to come out of the store. The plaintiff was "crumbled" over, his clothes were torn to shreds, all of his hair and eyebrows were burned off, he was bleeding badly from his face, his arm was badly damaged and his face was charcoaled. Mr. Thompson testified he reached the plaintiff about ten seconds after he parked his truck and immediately tried to help him. This, of course, makes a lapse of twenty-five seconds from the time Mr. Thompson heard the explosion until he got to plaintiff-appellant to help him. While helping plaintiff-appellant across the street plaintiff said something to him.

During the trial of the cause plaintiff's counsel asked "What did he (plaintiff) say?" Defendant's counsel objected and the objection was sustained over plaintiff's argument that what plaintiff had said was part of the res gestae and a spontaneous exclamation.

Plaintiff made his offer to prove that the answer to the question "What did he (plaintiff). say?", had the witness been permitted to answer, would have been that Mr. Thompson asked the plaintiff "John, what happened?" and that plaintiff responded "Somebody shot into the primers with a rifle."

Mr. Thompson further testified that while holding plaintiff up, as shown by plaintiff's Exhibit "F," which was a photograph taken within twenty seconds after he left his truck he had another conversation with plaintiff-appellant. Objection was made and sustained. An offer to prove was made, which was that Mr. Thompson would have testified that "He told me a man brought in a loaded .22 rifle and attempted to unload it; but that he (John) [plaintiff] saw a live round in the chamber, and that the man discharged the gun into the stack of primers."

Albert Ray Baldwin, a co-employee of plaintiff-appellant, testified he was working in the rear of the store in the work shop on the morning of the explosion. Immediately following the explosion Mr. Baldwin left the store and came to where appellant and the store owner were standing. He testified as to plaintiff-appellant's condition and his clothes, supplementing the same with the fact that plaintiff-appellant "had dirt and splinters all over his hide and was shivering and bleeding and burnt."

Mr. Baldwin was asked whether plaintiff-appellant said anything to him at that time, to which an objection was made and sustained over plaintiff-appellant's argument that the statement was a part of the res gestae and a spontaneous declaration.

Plaintiff-appellant made an offer to prove and that the evidence would have been that Mr. Moster said to Mr. Baldwin that someone was trying to unload a .22 caliber rifle and discharged it into the primers.

There was evidence of a Dr. John Hinckley, who testified as an expert chemist operating a scientific laboratory doing scientific investigation into explosions. Dr. Hinckley testified that he performed experiments with shot shell primers of the type in question in the case. They did not explode from heat until they were subjected to a temperature of between 500 to 600 degrees Fahrenheit and the temperature must have been

maintained for a period of time. He further testified the primers could be struck with a hammer and not explode. However, they can be set off by firing at them with a rifle. Dr. Hinckley performed an experiment whereby he fired at such primers with various firearms, including a .22 rifle, and detonations occurred, which was demonstrated by photographic exhibits.

Dr. Hinckley was presented with a hypothetical question based upon facts which were at that time in the record as to the cause of the explosion and he testified that "My opinion is that he fired into the primers." On cross-examination the Doctor testified that an open fire could not have been the cause of this particular explosion.

Plaintiff-appellant was called as a witness and asked if he was employed at the sporting goods store on the day of the explosion to which question defendant objected, or to any other testimony by plaintiff concerning matters occurring in the lifetime of the decedent, Alva W. Bower. This objection was sustained by the court.

An offer to prove was made, showing that if permitted to testify the plaintiff-appellant would so testify that he was employed and working at the sporting goods store at the time of the explosion; Alva W. Bower came into the store, inquired about a rifle scope, went back outside and returned with a .22 rifle in his hand. He would further testify that "Bower was unloading the rifle as he re-entered the store by turning it upside down and pouring the shells out." He did not completely unload the rifle and plaintiff further stated in his offer to prove "I saw this live round in the rifle, but he let the bolt go, discharging the rifle into the stack of primers in the southeast corner."

The muzzle of the rifle was six to eight feet from the primers when they were fired into; the report of the rifle and the explosion appeared simultaneous to plaintiff.

Plaintiff-appellant then offered evidence of the treating physician concerning his injuries after which he rested and

defendant-appellee moved for a directed verdict under Rule TR. 50, which motion was sustained and the jury instructed to return its verdict for the defendant, which in obedience to the order of the court, it did do. Judgment was entered accordingly for the defendant.

Plaintiff-appellant timely filed a motion to correct errors under Rule TR. 59, together with a memorandum attached thereto, which motion, omitting the formal parts, is in the words and figures as follows, to-wit:

> "Plaintiff, pursuant to Trial Rule 59, moves the Court to correct errors and for a new trial on the following grounds:
>
> "1. The Court committed error of law in refusing to admit certain testimony of witness, Robert Thompson.
>
> "2. The Court committed error of law in refusing to admit certain testimony of witness, Ray Baldwin.
>
> "3. The Court committed error of law in refusing to admit certain testimony of plaintiff, John Moster.
>
> "4. There was sufficient evidence to require the Court to submit the case to the jury and there was error in law not to do so."

We shall group specifications 1, 2 and 3 and treat them together.

Plaintiff-appellant in his argument sets forth that since Rule TR. 50 was adopted and became the law, no Indiana case has been decided in which the question was under what circumstances judgment on the evidence should or should not be granted. He does say that the Rule was touched on fleetingly in two recent Indiana cases and goes on to say that under the prior Indiana law a directed verdict was not proper unless there was a total absence of evidence or reasonable inference on an element of plaintiff's case.

This latter contention of plaintiff-appelant is touched upon in the case of *Indianapolis Saenger Chor, Inc.* v. *AFNB* (1971), 149 Ind. App. 665, 274 N. E. 2d 728, 27 Ind. Dec. 475.

In the *Indianapolis Saenger Chor, Inc.* case, *supra,* the court quoted from the case of *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, as follows:

" 'When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. (Citing cases.)

" 'In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. (Citing cases.)' "

The court further quoted from *Cooper* v. *Teeters* (1969), 146 Ind. App. 150, 253 N. E. 2d 277, as follows:

" 'The appellant's first specification of error in her motion for a new trial alleged that the decision of the trial court in directing the jury to return a verdict for the defendants was contrary to law. In considering this allegation of error, it must be decided whether the evidence presented at the trial supported, without conflict, only one inference, which inference was in the favor of the defendants. *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734.' "

The more recent case of *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N. E. 2d 849, held:

". . . the cases cited herein support the rule that whenever there is *any* evidence allowing reasonable men to differ, a plaintiff should be given the benefit of the doubt, even though he has not *substantially* supported his allegations."

In the case at bar the witness Mr. Sawyer observed another man come into the store while he was being waited upon by the plaintiff-appellant. This man who entered the store inquired about a rifle scope and went outside and came back into the store with a gun in his hand just as Mr. Sawyer was leaving. Mr. Sawyer stated the rifle was probably a .22. About fifteen seconds after Mr. Sawyer passed this man with the rifle re-

entering the store Mr. Sawyer was in his automobile and the explosion occurred in the store building.

Dr. John Hinckley, an expert witness, who was a chemist and operated a scientific laboratory and did scientific investigation of explosions, testified that he did experiments with shot shell primers of the type in question in the case and they did not explode from normal heat, nor hammers nor fire. He further testified he experimented with similar primers by firing various firearms at them, including a .22 rifle, and detonations occurred. He further testified in answer to a hypothetical question based upon facts in the record in the case at bar that the cause of the explosion was, in his opinion, that the man with the rifle had fired into the primers.

The 500,000 primers were against the east wall in the front of the store building and a deputy fire chief testified that a hole some three to four inches deep was blown into the concrete floor, about four feet square.

From the amount of time that expired from the time that Mr. Sawyer met the man with the rifle re-entering the store and Mr. Sawyer got into his car, which was fifteen seconds, it may reasonably be inferred that the man he met re-entering the store with the rifle still had the possession of the rifle and discharged the same into the stack of primers, causing the explosion.

In addition to inferences drawn from the evidence, there was direct evidence that plaintiff-appellant, although critically injured, was able to stagger out of the building and the decedent, Alva W. Bower's body, was found in the store building after the store had been completely destroyed by the explosion and fire.

This court is of the opinion that the evidence is not strong enough, under the case of *Cooper* v. *Teeters, supra,* that in considering the allegation of error it may be decided that the evidence presented at the trial supported, without conflict, only one inference, which inference was in favor of the

defendant. In our opinion, reasonable men could come to that inference but would not necessarily be forced, as reasonable men, to come to that inference only.

We next look to *Mamula* v. *Ford Motor Company, supra,* where the court stated that the cases cited support the rule that whenever there is *any* evidence allowing reasonable men to differ, a plaintiff should be given the benefit of the doubt, even though he has not *substantially* supported his allegations, and having considered the same we are of the opinion that there was at least an inference that the decedent, Alva W. Bower, deceased, was negligent and it was his negligence which was the proximate cause of plaintiff-appellant's injuries and the court erred in directing the verdict.

This court, as well as our Supreme Court, has many times stated that where a case is reversed on one error the court is not required to write on any other alleged error or errors. In fact, this rule of law is so well settled it needs no citation of authority.

However, we feel that there devolves upon this court an obligation in some cases to do a full and complete job. This is one of those cases. We believe that the questions arising under the Dead Man's Statute will necessarily arise again on the trial of this cause and there will be no guidelines in Indiana for the assistance of the respective counsel and the trial judge who re-hears this cause and we would be remiss in our duty in failing or refusing to set up guidelines as we determine them to be under the Dead Man's Statute as it applies to the case at bar.

We have made an exhaustive research on the question of res gestae in proving statements that will be admissible in a case where the Dead Man's Statute is invoked to protect the estate of the decedent.

We find many, many cases in Indiana as well as in other states, that invoke the Dead Man's Statute and prevent any

claim being made against the estate where conversations were had and the deceased is charged with having made the conversation.

In the case at bar the deceased, of course, could not be a witness and there is'not that first bit of evidence that he said anything to anybody about an explosion or there might be an explosion or a danger; there is the evidence that a man came into the store and asked the clerk about rifle scopes and then left and re-entered with a rifle that appeared to be a .22. His identity was unknown to Mr. Sawyer, the witness who observed this, and, of course, the plaintiff-appellant during the trial was not permitted to testify as to his identity.

I. L. E., Vol. 12, *Evidence*, § 61, p. 496, defines res gestae, in general, as follows:

"The spontaneous, undesigned and contemporaneous incidents of a litigated fact may be proved with illustrative of that fact."

I. L. E. further states:

"The doctrine represented by the Latin term 'res gestae' is regarded as an exception to the hearsay rule which requires all of the hearsay rule's guaranties of safety, such as confrontation, cross-examination and oath. In every case where the question of the admissibility of evidence under the res gestae doctrine is in question, the admissibility of such evidence is peculiarly within the discretion of the trial court, and the decision of the court must depend on the particular facts of the case.

"The doctrine of res gestae is largely based upon spontaneous statements made at the time of an accident or occurrence or transaction, usually by one of the parties thereto. . . ."

Such declarations are admitted into evidence as an exception to the hearsay rule for the reason that they are considered to be a part of the act, transaction or event, spontaneously arising from it, without premeditation.

The scope of the res gestae doctrine seems to be strictly limited to the surrounding facts of a transaction or event and accompanying declaration.

29 Am. Jur. 2d, *Evidence,* § 708, p. 769, states that:

"One of the exceptions to the hearsay rule under which evidence is frequently admitted is the 'res gestae' or 'spontaneous exclamations' exception. 'Res gestae' is, of course, the broader concept and may generally be defined as matter incidental to the main or principal fact, and explanatory thereof. . . ."

In discussing the general matter of res gestae it is stated further that it may include acts and words that are so closely connected with the event or occurrence as to constitute a part of the event or occurrence—that is, acts and words which are spontaneous and so related to the transaction or occurrence in question as reasonably to appear to be evoked and prompted by it. It further states that the term "res gestae" comprehends a *spontaneous and instinctive reaction to a startling or unusual occurrence during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content.* (Our emphasis.) Further, such statements which conform to the above requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as a distinct and separate exception to the hearsay rule in criminal as well as civil cases.

Speaking further, the author says:

". . . As otherwise aptly expressed, whether a declaration is a part of the res gestae *depends upon whether the declaration was the facts talking through the party or the party talking about the facts.*" (Our emphasis.)

Our Dead Man's Statute, *supra,* was wisely enacted by our General Assembly to prevent fraud and unjust claims being

brought against decedent's estates when the decedent, of course, had no chance to answer and defend himself and in many instances when there was no other person or persons alive to testify in behalf of the decedent.

In 29 Am. Jur. 2d, *Evidence,* § 727, at p. 799, it is stated res gestae declarations are admitted into evidence without the sanctity of an oath on the part of the declarant on the theory that they derive their credibility from the stress of circumstances under which they are made and not from the trustworthiness of the person making them. The author further states that even though it be a fact that the declarant is incompetent to testify as a witness this will not ordinarily affect the admissibility of his statements under the res gestae rule in either civil or criminal prosecutions. Thus, the res gestae declarations of a husband and wife are admissible for or against each other, even if the spouse would be incompetent to testify as a witness in the case. An unpardoned felon or a convict who is a declarant will not have the admissibility of his res gestae statements affected merely because he is a convict or an unpardoned felon. Even though a declarant's incompetency as a witness will not exclude his res gestae utterances, the res gestae utterances of a declarant are inadmissible if his mental and physical condition is such that his statement lacks probative value.

A. L. R. 3d, Vol. 4, § 23, p. 208, at 209, in discussing res gestae cites *Walker* v. *State* (1955), 162 Tex. Crim. 408, 286 S. W. 2d 144, cert. den. 350 US 931, 100 L. Ed. 814, 76 S. Ct. 299. In *Walker* v. *State,* it is stated that the victim's statement as to the identity of the offender made shortly after she was assaulted was held admissible as a part of the res gestae, notwithstanding the defendant's contention that it was incumbent upon the prosecution to prove that the victim was competent and in full possession of her faculties at the time she made the statement. The court held that a res gestae

statement is admissible even though the person who made it is incompetent as a witness.

*Kenney* v. *Phillipy* (1883) 91 Ind. 511.

Each of the parties herein cite and rely upon *Fort Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind. 57, 88 N. E. 676, 89 N. E. 369. Of course, each of the parties construe this case in an honest effort to prove themselves correct in their arguments.

In this case, Roudebush was a motorman on an interurban which is alleged to have the right of way over a second interurban with which Roudebush's traction car collided head-on on a curve. Roudebush was fatally injured and died within four hours after the collision. About one minute after the accident, and while he was lying in the wreckage of his car with both legs severed from his body and also suffering from internal injuries, one Edward Booth said to him: "How did this terrible thing occur?" and he answered: "I should have had a clear track until 7:30 o'clock."

The admission of Roudebush's statement over appellant's objection is urged as reversible error, to which objection the court stated:

". . . This contention cannot be sustained. The injured motorman, as before stated, was found amidst the wreckage of the demolished car, which he had been operating, suffering from mortal injuries. His statement was made in response to an exclamatory inquiry directly, and almost inseparably, connected with a description of the situation. The physical facts attending the situation in which he was found were clearly competent evidence as to the cause of the accident and manner of its occurrence. His declaration explanatory of the collision was manifestly the natural emanation of the casualty, and the spontaneous and unstudied utterance of one having knowledge of the facts and called upon to account for the accident, and, made as they were in the presence of the circumstances, should possess a high degree of reliability. The principle is well settled in this State, and very generally approved elsewhere, that *declarations of an injured party, which are the natural outgrowth of, and tend to illustrate or explain*

*the occurrence giving rise to litigation, made so nearly contemporaneous therewith as to be in the presence of the transaction, and under such circumstances as necessarily to prevent deliberation and preclude any imputation of design, though not precisely concurrent in point of time, are admissible as part of the res gestae.* [Cases cited omitted.]" (Our emphasis.)

We find the same rule in *Robinson* v. *State* (1915), 184 Ind. 208, 110 N. E. 980, and also in *Hiatt* v. *Trucking, Inc.* (1951), 122 Ind. 411, 103 N. E. 2d 915.

We are of the opinion that a statement made by an injured party who survives and a statement made by an injured party who dies afterward, where such statements are determined to be a part of the res gestae, that such statements made by either of the parties may be introduced into evidence by the party or parties to whom such res gestae statement was made. We are of the further opinion that the Dead Man's Statute has no application to such a statement which is a part of the res gestae when made to a witness competent to testify.

We are of the opinion that the court committed reversible error in refusing to admit testimony of certain witnesses as set out in specifications 1, 2, and 3 of appellant's motion to correct errors.

For the reasons hereinabove assigned, this cause is reversed and remanded to the trial court for a new trial.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 286 N. E. 2d 418.