ROBERT LOUIS ARNOLD *v.* STATE OF INDIANA

[No. 2-277A53. Filed December 26, 1978.]

*John D. Regich,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *J. Roland Duvall,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, C.J. — Appellant-Defendant Robert Arnold (Arnold) appeals his convictions of Robbery[1] and Aggravated Assault and Battery,[2] claiming insufficiency of the evidence and that an evidentiary harpoon was used by the prosecution.

Affirmed.

## FACTS

The facts and evidence most favorable to the State are:

---

1.  IND. CODE 35-13-4-6.
2.  IND. CODE 35-13-3-1.

On March 3rd, 1976, Arnold attacked an elderly woman near her home on Holmes Street in Indianapolis, stole her purse and struck her in the face knocking her to the street. He then fled in a car, disposing of her light colored purse two blocks away near Addison Street. The purse's strap had been snapped in the attack.

Within minutes an Indianapolis police officer found the woman still lying in Holmes Street. She complained of head injuries, said she could not move and wiped fresh blood from her mouth. Although she was in a great deal of pain and could barely speak, she informed him her name was Flora Whitaker and that she lived nearby. After receiving a description of the assailant, the officer summoned an ambulance because the victim had suffered a pelvis or hip injury. She also complained of head injuries and her mouth was bleeding.

After locking the woman's home, the officer began searching for her purse and found a whitish purse near Addison Street, two blocks away. The strap had been broken and contained identification of Flora Whitaker. The social security money, however, which the purse contained was missing. He took the purse to the hospital where she identified it as hers.

A related criminal investigation turned up one of Arnold's accomplices who implicated Arnold in the robbery.

Flora Whitaker was in a nursing home at the time of the trial and could not testify. The only testimony regarding her identity was that of the investigating officer who questioned her as she was still lying in the street, saw her identification in the purse, and was told her name by neighbors. This testimony was objected to by Arnold as hearsay.

Later, during the testimony of another police officer the following exchange took place:

A. After receiving information of who we thought possibly was the subject involved, I received the name of Robert Dill as being one of the subjects involved in this purse grab.

Q. Is that the Robert Dill who testified . . . .

A. It is. The young man who's currently incarcarated at the Indiana Boys' School. At the time he was being held at the Marion

County Juvenile Center. Now, my investigation is taking place in the month April, whereas the crime had been perpetrated the month before, in March. I contacted the Juvenile Center, went out and talked with Robert Dill, advised him that I had information he was involved in this particular act, at which time he told me that he was, along with Robert Arnold, the defendant in this case. I brought — well, subsequent to that, my partner and I were investigating a business burglary on South Hancock Street, around the first of April. While we were down there . . . .

Arnold immediately objected, claiming this testimony was an evidentiary harpoon and implicated Arnold in another crime, which objection was overruled.

Arnold was convicted of Robbery and Aggravated Assault and sentenced to not less than ten (10) years nor more than twenty-five (25) years on Count I and not less than one (1) year nor more than five (5) years on Count II.

## ISSUES

Essentially three issues are presented:

1. Was there sufficient evidence to sustain the conviction?
2. Did the court err by allowing the police officer to identify the victim through hearsay?
3. Was an "evidentiary harpoon" used at the trial?

Arnold initially argues that there was insufficient evidence to support a conviction because there is no testimony of probative value to establish the identity of the victim or the amount of money stolen. The only testimony on the first point is that of the police officer, and his testimony was hearsay and should have been inadmissible.

The State responds that because the police officer came to know her name, his testimony is admissible.

Secondly, Arnold claims the prosecution introduced an evidentiary harpoon in the testimony of Officer Enmeirer, and that as there was no subsequent admonishment, reversible error occurred.

The State responds there was no harpoon.

## DECISION

### ISSUES ONE AND TWO

*CONCLUSION* — There was sufficient evidence to sustain the conviction.

Like Arnold we treat Issues One and Two as one.

Hearsay evidence is traditionally defined as testimony by a witness in a judicial proceeding relative to an extra-judicial declaration by another and which is offered for the purpose of proving the facts asserted by the declarant. *Trustees of Indiana University v. Williams* (1969), 252 Ind. 624, 631, 251 N.E.2d 439, 443. Indiana, like most states, has barred such testimony for over a century. *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 6541; *Parker v. State ex rel. Town* (1846), 8 Blackford 292. The essential policy underlying this exclusion is to protect the rights of a party against whom a statement is being offered by giving him the opportunity to confront the person making it, *U.S. v. National Homes Corp.* (1961), 196 F.Supp. 370, and has as its basis a fear that the out-of-court statement may be unreliable.

However, this exclusionary rule has been eroded by numerous exceptions, including the "res gestae" exception. *Kelley v. Dickerson* (1938), 213 Ind. 624, 13 N.E.2d 535; *Moster v. Bower* (1972), 153 Ind.App. 158, 286 N.E.2d 418.

"The doctrine of 'res gestae' is largely based upon spontaneous statements made at the time of an accident or occurrence or transaction, usually by one of the parties thereto . . . ." *Moster, supra* at 286 N.E.2d 424 citing I.L.E., Vol. 12, Evidence, § 61, p. 496. The reason such statements are allowed into evidence is that they form a part of the act, transaction or event, spontaneously arising from it, without premeditation. The admission of such evidence lies within the trial court's discretion. *Moster, supra.*

In determining whether a given situation falls within the res gestae, it is pertinent to inquire whether the circumstances of the case were such as to preclude the possibility of a shrewd and self-calculated answer. *Campbell v. Gladden* (1955), 383 Pa. 144, 118 A.2d 133. The fact that a statement is made in answer to a

question does not make it involuntary or destroy its spontaneity and thereby render the res gestae rule inapplicable. *Campbell, supra.*

Moreover, an utterance does not necessarily have to be made immediately following the event. In *Fort Wayne & W. V. Traction Co. v. Roudebush* (1909), 173 Ind. 57, 88 N.E. 676, a statement made by a fatally injured motorman about a minute after an accident, in response to an inquiry, was admitted into evidence. In that case the Supreme Court said:

> . . . declarations of an injured party, which are the natural outgrowth of, and tend to illustrate or explain the occurrence giving rise to litigation, made so nearly contemporaneous therewith as to be in the presence of the transaction, and under such circumstances as necessarily to prevent deliberation and preclude any imputation of design, though not precisely concurrent in point of time, are admissible as part of the res gestae.

*See also Robinson v. State* (1915), 184 Ind. 208, 110 N.E. 980; *Hiatt v. Trucking, Inc.* (1952), 122 Ind.App. 411, 103 N.E.2d 915.

The statement of the officer identifying the victim as Flora Whitaker was admissible under the res gestae exception to the hearsay rule, and had sufficient probative value to sustain a finding on the question of identity. Flora Whitaker was still lying in the street at the time she identified herself within moments after the crime. She had received a serious injury that required hospitalization, and was still in considerable pain. It is reasonable to conclude under these circumstances that the statement she made identifying herself was truthful (the identity was further corroborated by neighbors and by the stolen purse which contained her identification).

On all other elements of the crime, testimony from Arnold's accomplice, Robbie Dill, supports the conviction. As an accomplice is a competent witness and a conviction may be based solely on his testimony, IND. CODE 35-1-31-3; *Shepherd v. State* (1970), 254 Ind. 404, 260 N.E.2d 563, this evidence is competent to sustain the conviction on all other elements of the crime.

Thus we find there was sufficient evidence to sustain the conviction.

*ISSUE THREE*

*CONCLUSION*—The testimony of a police officer about another crime did not constitute an evidentiary harpoon.

Arnold maintains that *Layton v. State* (1966), 248 Ind. 52, 221 N.E.2d 881, which barred reference to other crimes not connected with the crime in question requires reversal.

Although the police officer in his disjointed narrative makes a vague reference to a business burglary, Arnold is not connected with this burglary. Nothing in the officer's rambling, somewhat confusing answer contravenes the *Layton* prohibition.

Considering the factors outlined in *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312, there was no "evidentiary harpoon". Also see *Bayer v. State* (1973), 158 Ind.App. 531, 303 N.E.2d 678, and *Bonds v. State* (1972), 258 Ind. 241, 280 N.E.2d 313.

Therefore, finding no grounds for reversal, we affirm.

Sullivan, J. concurs.

Shields, J. concurs in result.

NOTE—Reported at 383 N.E.2d 461.