**GREENFIELD BUILDERS AND ERECTORS, INC., Appellant,**

v.

**Edward A. FELLURE, Richard A. Syphers, Myra J. Fellure, S.A.F.E., A Partnership, Industrial Products, Inc., Greenfield Banking Company, and Hancock County Rural Electric Membership Corporation, Appellees.**

**No. 1–981A262.**

Court of Appeals of Indiana, First District.

Dec. 14, 1982.

Rehearing Denied Jan. 18, 1983.

Thaddeus R. Spurgeon, Pendleton, George J. Lewis, Lineback & Lewis, Greenfield, for appellant.

Raymond S. Robak, Wolf, Robak & Murphy, Greenfield, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Cross-claimant-appellant Greenfield Builders and Erectors, Inc. (Contractor) appeals a judgment entered in the Hancock Circuit Court in a trial without a jury in a construction contract action wherein the court found an express written agreement binding between the Contractor and cross-defendants-appellees Edward A. Fellure and Richard A. Syphers (Owners).[1]

We affirm.

## STATEMENT OF THE FACTS

On December 30, 1976, the Owners acquired 5.37 acres in Hancock County, Indiana for the construction of a new commercial building for their company, Industrial Products, Inc. (IPI). At that time and throughout 1976 and 1977, the Owners were also officers, directors and the only shareholders of IPI. In August, 1976, one Raymond R. Baxter (Baxter), President of appellant Greenfield Builders, met with the Owners and orally agreed to construct a commercial building on their property for $275,000. However, in late December, 1976,

---

1. Other named appellees are: Myra J. Fellure; S.A.F.E., A Partnership (which stands for Syphers and Fellure Enterprises); Industrial Products, Inc.; Greenfield Banking Company; and Hancock County Rural Electric Membership Corporation. The last two parties are not involved in this appeal as no evidence was presented at trial regarding their interest.

Baxter informed the Owners that he could not construct a building for that price and so the parties orally agreed to the increased price of $350,000.

On January 14, 1977, Baxter, acting on behalf of the Contractor, ordered component parts for a fourteen foot high building and retained Gregory Gammons, an architect, for $3,500. Gammons provided plans and specifications from time to time as requested by the Contractor; however, neither of the Owners was ever asked to provide plans or specifications.

After construction began, the Contractor and Owners orally agreed to a further increase in the cost of construction to $366,000, the additional $16,000 cost was for construction of a concrete pad to be used for future expansion. Then, in April, 1977, the Contractor requested a partial payment of the agreed sum in the amount of $95,000. Before making this payment, Syphers requested the Contractor to prepare a written agreement which would confirm the oral contract. A building contract was prepared by the Contractor, signed by Baxter and presented to the Owners on May 2, 1977. It provided for construction of a building for the sum of $350,000, and an expansion pad for $16,000, for an aggregate amount of $366,000. The contract further provided that neither the Contractor nor any other person or entity would place any mechanic's or materialmen liens against any real estate of the Owners.

The Owners accepted the writing by tendering a check for $95,000 to the Contractor on May 4, 1977. Subsequently, additional payments were made to the Contractor in the total amount of $335,000. Each payment was by check plainly marked "S.A.F.E. Richard A. Syphers, Edward A. Fellure." During construction, the Owners requested changes and additions to the original plans which added $40,303.59 to the original contract price. Then, on October 14, 1977, the parties met at Baxter's house to discuss the extra costs. After discussing only one or two items, Baxter advised the Owners, "[b]y god there will be no nit picking, you pay me $421,000 or we go to arbi-

tration." Baxter also tacked on an additional charge of $20,000, bringing the total amount he demanded to $441,000. Later the same day, the Owners offered to pay $400,000.

On October 17, 1977, the Contractor stopped working and instructed his employees and the subcontractors not to return to the construction site. No further work would be performed, the Contractor advised the Owners, until they agreed to pay the additional sum, which they refused.

Following a trial, the court entered special findings on April 8, 1981, which in pertinent part provided that 1) the actions of the parties together with the acceptance by the Contractor of the Owners' checks demonstrate that the parties intended to be bound by the provisions of the written agreement; 2) the Owners should receive a $41,435.65 credit toward the original contract price of $366,000 in satisfaction of various subcontractors' mechanic's liens judgments which they paid; 3) the Owners should receive a credit for $16,071.94 which they expended to correct deficient work by the Contractor; 4) the Owners should receive a $55,986.71 credit for money they expended to complete the construction; and 5) there is no evidence of the Contractor's having timely and properly filed notice of an intention to hold a lien on the Owners' property.

The trial court thereafter adjudged that 1) the Contractor was entitled to recover $62,243.59 from the Owners for changes and additions they requested after the original contract; and 2) the Owners were entitled to $113,494.30 from the Contractor for costs paid by the Owners to correct deficiencies and to complete performance of the building.

## ISSUES

The Contractor presents five issues for review which we restate as follows:

I. Whether the trial court erred in finding that a written contract existed between the Contractor and Owners, which agreement included a no-lien provision;

II. Whether the Owners breached the contract and thereby excused the Contractor from further performance;

III. Whether the trial court erred in finding that there was no evidence to show a valid filing of a notice to hold a mechanic's lien;

IV. Whether there is sufficient evidence to sustain the trial court's findings as to costs and additions in the construction; and

V. Whether the trial court erred in finding that the Owners expended $16,071.94 to correct deficient work performed by the Contractor.

## DISCUSSION AND DECISION

### Issue I. Contract

#### a. Offeree

The Contractor argues that the trial court erroneously found some blank forms Baxter gave the Owners as evidence of a written agreement between the parties. However, in the event this writing represents an offer, the offeree is IPI, not the Owners, Fellure and Syphers, who are not the designated parties to the contract. The Contractor further asserts that aside from the payment of $95,000 by the Owners upon receipt of the signed agreement by Baxter, no notice of acceptance was made by IPI, the named party on the contract. The Contractor cites *Gates v. Petri,* (1957) 127 Ind. App. 670, 143 N.E.2d 293, for the proposition that an offer can be accepted only by the offeree, IPI, and any manifestation of acceptance by the Owners personally is no notice of acceptance of the contract by IPI.

We first note that the trial court made special findings and conclusions in this cause. In reviewing the trial court's findings of fact, the Court of Appeals neither weighs the evidence nor determines the credibility of the witnesses; findings of fact will be disturbed only if the record discloses that there were neither facts nor inferences on which to base the findings. *Indiana Tri-City Plaza Bowl, Inc. v. Estate of Glueck,* (1981) Ind.App., 422 N.E.2d 670. In other words, this court will disturb the trial court's findings of fact only when such are clearly erroneous. *Indiana Industries, Inc. v. Wedge Products, Inc.,* (1982) Ind. App., 430 N.E.2d 419.

The evidence shows that in late December, 1976, the Owners and the Contractor, through Baxter, orally agreed on the construction of a building for $350,000. An architect was hired for $3,500 in January, 1977, and he provided plans and specifications. Thereafter a written document was prepared and signed by Baxter and delivered to the Owners. It was not a blank form, but contained a description of the work, the contract price and the names of the parties. Although the agreement identifies IPI as the contracting party, this writing represents only a part of the contract. Originally, an oral agreement was struck between the parties. As this court said in *Citizens Progress Company v. James O. Held & Co., Inc.,* (1982) Ind.App., 438 N.E.2d 1016, 1021:

> "Indiana recognizes the validity of a contract resting partly in writing and partly in parol, but such a contract is a mere oral contract. Where it is necessary to resort to oral evidence to establish the terms of the contract the whole contract is oral. *Board of Commissioners of Marion County v. Shipley,* (1881) 77 Ind. 553; 6 I.L.E. *Contracts* § 177."

While as a general rule, the identity of the parties to a contract is ascertained from examination of the written instrument, *Sunman-Dearborn Community School Corporation v. Kral-Zepf-Freitag & Associates,* (1975) 167 Ind.App. 339, 338 N.E.2d 707, it is also true that mere reference to a more formalized contract does not void the presently existing agreement, whether that agreement is oral or an informal writing. *McMahan Construction Company v. Wegehoft Brothers, Inc.,* (1976) 170 Ind.App. 558, 354 N.E.2d 278.

In the case at bar, the evidence discloses that the Owners and the Contractor completed an oral contract in December, 1976. Thereafter, the parties orally agreed

to a number of additions and modifications to the original plans of the construction. Fellure and Syphers were at all times the true parties to the oral agreement. The May 2, 1977, writing is only a partial representation of the contract, and the fact that Baxter designated IPI the contracting party is not controlling. There was substantial evidence which established the identity of the offeree as Fellure and Syphers. The trial court did not err.

*b. No-lien provision*

█ Even if the contract is binding, the Contractor argues, the trial court erred in finding that the contract incorporated a no-lien provision. To obtain the benefits of a no-lien provision, the Owners must properly record the instrument pursuant to Ind. Code 32–8–3–1.

The trial court found that "[s]aid contract further provided that [neither] Greenfield Builders [Contractor] nor any other person or entity would place any Mechanics or Materialman Liens against any real estate of the owner." In relevant part, Ind.Code 32–8–3–1 provides:

"No provision or stipulation in the contract of the owner and principal contractor that no lien shall attach to the real estate, building, structure or any other improvement of the owner shall be valid against subcontractors, mechanics, journeymen, laborers or persons performing labor upon or furnishing materials or machinery for such property or improvement of the owner. . . ."

As the Owners point out in their brief, the Mechanic's Lien Statute specifically excludes contractors from the class of persons entitled to hold liens in no-lien contracts between the owner and a principal contractor. In *Hammond Hotel and Improvement Company v. Williams*, (1931) 95 Ind.App. 506, 521, 176 N.E. 154, the court reviewed a mechanic's lien statute virtually identical to the present law and held:

"This section applies to subcontractors, mechanics, journeymen, laborers, etc., and does not invalidate a waiver of the lien on the part of the original contractor even though it is not recorded.

It has been held by both the Supreme and Appellate Courts of this state that a contractor may waive the right of himself and those claiming under him to the lien given by statute where the statute imposes no restriction on his right and he does so by expressly agreeing that no liens shall be filed or by entering into an agreement which otherwise clearly shows by the language used that such was the intention of the parties. *Kokomo, Frankfort and Western Traction Co. v. Kokomo Trust Co.* (1923), 193 Ind. 219, 137 N.E. 763; *Baldwin Locomotive Works v. Hines* (1919), 189 Ind. 189, 125 N.E. 400; *Masson v. Ind. Lighting Fixture Co.* (1913), 53 Ind.App. 376, 380, 100 N.E. 875, 101 N.E. 753."

As president of Greenfield Builders (the Contractor), Baxter prepared and signed the written agreement providing the no-lien provision. It is not a case of the Owners trying to give effect to their own no-lien provision as the Contractor's brief seems to argue; rather, the provision is clear evidence that the Contractor expressly intended to waive his right to file a lien against the Owners' property. The trial court's finding is not erroneous.

*Issue II. Breach of contract*

█ The Contractor next argues that the refusal of the Owners to pay more than $400,000 after the Contractor informed them the cost of construction had exceeded $421,000 excused the Contractor from any further performance. The evidence discloses that attempts were made by the Owners on three separate occasions to agree with the Contractor on additional costs. Furthermore, in making demands for additional sums of money, the Contractor did not specifically document the extra costs, and therefore, the trial court correctly found that the Owners' refusal to pay unsubstantiated amounts of money did not excuse the Contractor from performance.

*Issue III. Notice to hold a mechanic's lien*

█ Since the Owners stipulated at trial that the Contractor filed a notice of an

intention to hold a mechanic's lien, the Contractor contends the court erred in finding that there was no evidence of a valid filing of such notice. In support thereof the Contractor cites *Raper v. Union Federal Savings and Loan Association of Evansville,* (1975) 166 Ind.App. 482, 336 N.E.2d 840, for the proposition that stipulations of issues of fact are favored by the law.

As we have already held, the Contractor intended to waive his right to file a lien against the Owners' property by including a no-lien provision in his signed agreement. Assuming, *arguendo,* that such waiver did not exist, the stipulation here relied upon is plainly insufficient for appellant's purposes. It fails to contain any evidence as to when it was filed or the contents of such notice. The statutory requirements for obtaining a valid lien under Ind.Code 32–8–3–3 require, *inter alia,* that the claim shall 1) be filed in the recorder's office of the county within sixty days after the performance; 2) contain a sworn statement in duplicate of his intention to hold a lien; 3) specifically set forth the amount claimed; 4) give the name and address of the claimant; and 5) give a legal description of the property.

As the Owners correctly state in their brief, there is no evidence before the court indicating whether the lien was timely filed, to whom the notice was given, the amount of the claim or the real estate involved. As the *Raper* court also stated, the parties may not agree on the legal effect of factual stipulations. Here, the only stipulated fact before the trial court was that a notice was filed. Counsel to the Contractor was present when the Owners' counsel made the stipulation, but did not respond in any way. He certainly should have introduced the notice. Therefore, the trial court correctly found there was no evidence of the Contractor's having timely filed a notice of an intention to hold a lien.

*Issues IV and V. Trial court's findings of fact as to costs and additions*

■ The Contractor next attacks the court's Finding No. 12 which found that the cost of the changes and additions to the original plans amounted to $40,303.59. The Contractor claims he provided the only evidence as to these extra costs and they far exceeded the amount found by the court.

We remind the appellant that findings of fact and conclusions of law by the trial court will be set aside only where they are clearly erroneous. *Matter of Estate of Apple,* (1978) Ind.App., 376 N.E.2d 1172. The evidence discloses that many extra costs claimed by the Contractor were not in fact for changes or additions, but were for items originally included in the initial contract price. Furthermore, the figures of other so-called increased costs were inconclusive and there was conflicting evidence as to whether they should have been included under increased costs. We are of the opinion that the evidence does support the trial court's calculation awarding the Contractor $40,303.59 for increased construction costs.

Finally the Contractor challenges there was insufficient evidence to support the trial court's findings that the Owners expended $16,071.94 to correct deficient work performed by the Contractor and $55,986.71 for completion of the construction project.

Quite the contrary, we observe that the uncontradicted evidence irrefutably supports the trial court's findings on these amounts. The total cost submitted into evidence by the Owners for both corrective and completion work was $76,323.18, an amount greater than the trial court's final award of $72,058.65. Thus, no error was committed by the trial court in its findings. For all the reasons above, the judgment of the trial court is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.