Maurice K. WOODWORTH, Appellant,

v.

The ESTATE OF Sigfried YUNKER, deceased, Barbara Ganger, and Robert Yunker, Appellees.

No. 44A03–9601–CV–12.

Court of Appeals of Indiana.

Dec. 9, 1996.

Richard W. Rogers, Middlebury, for Appellant.

C. Susan Glick, Richard K. Muntz, LaGrange, for Appellees.

## OPINION

GARRARD, Judge.

Maurice Woodworth ("Woodworth") appeals an adverse judgment claiming that the trial court erred by ruling that Woodworth and five of his witnesses were incompetent under Indiana's Dead Man's Statutes.[1]

## FACTS

On January 29, 1991, Woodworth filed a complaint against the Estate of Siegfried Yunker ("Estate") based on an alleged oral contract between Woodworth and Siegfried Yunker ("Yunker"). Woodworth alleged that, under the oral contract, he would pro-

vide all the daily care Yunker required in return for repayment in Yunker's will. It is undisputed that Woodworth cared for Yunker, on a daily basis, from October 1986, until Yunker's death on May 30, 1990. On those occasions Woodworth was unable to tend to Yunker, he sent a replacement. Yunker bequeathed his farm and home to Woodworth "for his Christian helpfulness extended to my last sister, and to me." (R. 30). Woodworth claimed that he was owed wages, mileage, and expenses under the oral contract for the services he provided to Yunker, regardless of the inheritance.

A bench trial was held on this matter on November 23, 1994. Woodworth presented eight witnesses[2]. The Estate objected to the testimony of Niley Wisler, Wilbur Schmidt, Mary Giggy, and Tim and Cherie Borg (collectively "witnesses"), on the grounds that they were incompetent to testify under the Dead Man's Statute[3] as agents of Woodworth. The trial court noted the objection and conditionally admitted the witnesses' testimony pending a later determination of their competency. In sum, the witnesses testified to the times that they cared for Yunker at Woodworth's behest, and the exact nature of the services they performed. Niley Wisler also testified that Woodworth compensated him for his help by providing services as payment. Schmidt testified that he was told by Yunker that he would have to ask Woodworth for payment for his services. The testimony of the witnesses also revealed that Woodworth controlled who was asked to replace him in his absence and how long a replacement was needed.

On February 10, 1995, the trial court ruled on the Dead Man's Statute objection of the Estate, striking the testimony of Wisler, Schmidt, Giggy, and the Borgs. The trial court found that the witnesses were agents of Woodworth in "continuing the contract" between Woodworth and Yunker, and therefore incompetent to testify under I.C. § 34–1–14–8. (R. 183). On August 31, 1995, Wood-

---

1. Ind.Code §§ 34–1–14–6 & 34–1–14–8.

2. Woodworth did not testify on his own behalf due to the Estate's timely objection under the Dead Man's Statute, Ind.Code § 34–1–14–6. The

trial court decided to delay Woodworth's testimony pending the resolution of this objection.

3. Ind.Code § 34–1–14–8.

worth testified under an offer of proof. At that time, Woodworth argued that his testimony fell under an excited utterance/res gestae exception to the Dead Man's Statute. Woodworth claimed that while checking on Yunker in October 1986, he found Yunker lying on his floor in great pain as a result of a fall. While Woodworth lifted Yunker into bed, Yunker allegedly told Woodworth that he would pay Woodworth one dollar a day plus further payment in his will, if Woodworth would care for him until he died. Woodworth argued that this statement constituted an excited utterance.

The trial court responded to Woodworth's excited utterance claim on October 2, 1995, ruling that no excited utterance exception to the Dead Man's Statute existed. The trial court therefore struck Woodworth's testimony and entered judgment in favor of the Estate. Woodworth filed a Praecipe on October 16, 1995, and timely perfected his appeal.

## ISSUES

Woodworth presents two issues upon appeal which we restate as follows:

I. Whether the trial court erred by ruling the five witnesses agents of Woodworth and therefore incompetent to testify under I.C. § 34–1–14–8.

II. Whether the trial court erred by ruling no excited utterance exception to the Dead Man's Statute existed.

## DISCUSSION

### ISSUE I

■ The first issue Woodworth presents is whether the trial court correctly found that the witnesses were agents of Woodworth and thereby excluded by I.C. § 34–1–14–8[4]. Ind. Code § 34–1–14–8 states in relevant part:

No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness, in any suit, upon, or involving, such contract, as to matters occurring prior to the death of

such decedent, on behalf of the principal to such contract, against the legal representatives, or heirs of the decedent, unless he shall be called by such heirs or legal representatives.

The trial court found that the witnesses were agents in the continuing of the contract and therefore excluded by this statute. Woodworth argues that he did not exert sufficient control over the witnesses' actions to create an agency relationship.

■ The question of whether an agency exists is ordinarily a question of fact. *United Art. Theatre v. Ind. D. of State Rev.*, 459 N.E.2d 754, 758 (Ind.Ct.App.1984). Because the present action was tried before the judge without a jury, the trial court was the finder of fact. In our review of the trial court's factual finding of an agency relationship we will neither reweigh the evidence nor assess the credibility of the witnesses. *Greenfield Builders and Erectors, Inc. v. Fellure*, 443 N.E.2d 87, 90 (Ind.Ct.App.1982). We will disturb the findings of fact only if the record reveals no facts or inferences on which the trial court could have based its findings. *Id.* "In other words, this court will disturb the trial court's findings of fact only when such are clearly erroneous." *Id.*

■ The trial court found that the five witnesses were agents of Woodworth because he controlled the times they performed their services and because there was evidence that at least two of them were compensated for their services by Woodworth. An agent "is a substitute or deputy appointed by the principal with power to do certain things which the principal may or can do." 3 Am.Jur.2d *Agency* § 1 (1964). "[T]he elements of an actual agency relationship are three: manifestation of consent by the principal; acquiescence by the agent; and control exerted by the principal." *Hope Lutheran Church v. Chellew*, 460 N.E.2d 1244, 1247 (Ind.Ct.App.1984).

The trial court relied upon the testimony of the five witnesses and Woodworth in making its determination that an agency relationship existed. The evidence reveals that

**4.** Woodworth does not otherwise dispute the applicability of this statute if the witnesses are

indeed his agents.

Woodworth controlled the dates the witnesses went to Yunker's home to care for him, and for how many days they were needed as replacements. Woodworth also controlled who was chosen to care for Yunker in his absence. It is clear that all the witnesses agreed to care for Yunker in Woodworth's absence and that Woodworth acquiesced to the services the witnesses performed. Of particular importance was the testimony of Wisler and Schmidt. Wisler testified that Woodworth repaid him for his services by providing services in return, while Schmidt testified that he was told by Yunker that he, Schmidt, would have to ask Woodworth for payment for his services.

We cannot disturb the trial court's finding unless it is clearly erroneous. *Greenfield Builders and Erectors v. Fellure*, 443 N.E.2d 87, 90 (Ind.Ct.App.1982). The testimony of the witnesses showed that they acquiesced to performing the services for Woodworth and that Woodworth consented to their actions as his substitute. It is also reasonable to infer from the testimony that Woodworth controlled their actions by choosing which witness to send to Yunker's home and deciding how many days they were needed. Woodworth argues that he did not exert sufficient control over the witnesses' actions while caring for Yunker to meet the technical definition of an agency relationship. The trial court disagreed, finding sufficient control to create an agency relationship. We find that the trial court's determination that an agency relationship existed was not clearly erroneous because there were both facts and inferences to support the trial court's finding. The trial court did not err in its determination that the five witnesses were agents of Woodworth and, therefore, their testimony was properly excluded under I.C. § 34–1–14–8.

## ISSUE II

■ Woodworth's second contention is that the court erred by failing to admit Woodworth's testimony of the terms of his agreement with Yunker as an excited utterance or res gestae exception to the Dead Man's Statute, I.C. § 34–1–14–6. We disagree.

■ Initially, we stress the nature of Woodworth's disqualification. The Dead Man's statute addresses the competence of witnesses to testify. The excited utterance exception, on the other hand, speaks to the admissibility of certain evidence. It does not address the competency of persons to testify. Woodworth nevertheless argues that *Moster v. Bower*, 153 Ind.App. 158, 286 N.E.2d 418 (1972) creates such an exception. In doing so, he misperceives what the *Moster* court held.

*Moster* involved a negligence claim arising from an explosion in a sporting goods store. Suit was brought by a store clerk injured in the explosion against the estate of the person who allegedly caused the explosion. About thirty seconds after the blast the clerk was able to get out of the store and was assisted by Mr. Thompson, who had just arrived upon the scene and heard the blast. As Thompson was assisting the clerk, Moster, across the street and away from the building, Moster told him that somebody shot into a supply of shotgun primers with a rifle. Moster also told him that Moster saw a live round in the chamber as the man was attempting to unload the rifle. The objection at trial concerned whether Thompson could testify to these statements, which were obviously hearsay. The case did not really involve the Dead Man's Statute because the witness in question was not within its proscription. Thus, as the court stated,

> We are of the further opinion that the Dead Man's Statute has no application to such a statement which is a part of the res gestae *when made to a witness competent to testify.*

286 N.E.2d at 426 (our emphasis).

■ In the instant case it was Woodworth, the statutorily barred witness, who sought to testify and he was properly precluded from doing so. Moreover, the statement sought to be introduced was not properly an excited utterance within the meaning of Ind.Evidence Rule 803(2) even had it been made to a third party. The exception (to the hearsay rule) for excited utterances is limited to "A statement *relating to a startling event or condition* made while the declarant was under the stress of excitement caused by the

event or condition." (Our emphasis.) The essence of this limitation was captured by the *Moster* court in quoting with approval from Am.Jur.2d:

[W]hether a declaration is a part of the res gestae *depends upon whether the declaration was the facts talking through the party or the party talking about the facts.* (Emphasis in original.)

29 Am.Jur.2d, *Evidence*, § 708, at 769.

The agreement for care which Woodworth sought to introduce did not qualify as a statement relating to a startling event or condition.

The trial court committed no error. The judgment is affirmed.

Affirmed.

STATON and NAJAM, JJ., concur.