Ruben **HERNANDEZ,** Appellant,

v.

**STATE of Indiana, Appellee.**

No. 1281S376.

Supreme Court of Indiana.

Sept. 24, 1982.

Kenneth M. McDermott, McDermott & Black, Plymouth, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Forgery, and Attempted Possession of a

Controlled Substance by Forgery. The jury also found appellant to be an habitual criminal. Appellant was sentenced to two years on the forgery count and one year for the attempted possession. Thirty years imprisonment was added for the habitual criminal finding which was ordered to be served consecutively to the two concurrent terms.

Appellant presented a prescription to the pharmacist at Meister's Drugs in Bremen, Indiana. The prescription bore the name Louis Rodrigus and was allegedly signed by Dr. Greenlee of Elkhart. The prescription ordered twenty-five four-milligram tablets of Dilaudid to be dispensed. The pharmacist classified Dilaudid as a Schedule II narcotic controlled substance used for pain. After filling the prescription, the pharmacist telephoned the police. The pharmacist identified appellant as the man who presented the prescription to him on May 15, 1980.

The parties stipulated to a statement prepared by Dr. Greenlee which set forth the following facts: (1) Lewis Rodrigus, Louis Rodrigus, Ruben Hernandez or Ruben Gonzales had never been treated by Dr. Greenlee; (2) Dr. Greenlee never prescribed Dilaudid because of its addictive qualities; (3) the prescription was not signed by Dr. Greenlee nor did he authorize anyone to do so; (4) Dr. Greenlee did not know who had forged his name to the prescription.

Appellant claims the trial court erred in limiting cross-examination of the State's key witness, Mr. Meister, who was the pharmacist at Meister Drugs. On direct examination the druggist stated appellant presented a prescription to him for Dilaudid. On cross-examination defense counsel asked Meister if he conversed with appellant at that time. The prosecutor made an objection based on hearsay which the trial court sustained. Defense counsel made an offer to prove the contents of the conversation. Outside the hearing of the jury Meister related that he questioned appellant regarding his address and for whom the medication was intended. Appellant stated the drug was "for an old man out in the car".

The State correctly notes an offer to prove is improper on cross-examination. Walker v. State, (1970) 255 Ind. 65, 262 N.E.2d 641; Carter v. State, (1981) Ind. App., 422 N.E.2d 742. The underlying theory is the party cross-examining a witness cannot be presumed to know what the witness's testimony will be. Walker, supra.

Appellant argues the conversation was within the "res gestae" exception to the rule against hearsay. Appellant alleges the content of the exchange was necessary to show the defendant's state of mind because a critical determination to be made by the trier of fact is whether intent to defraud existed.

The trial court properly ruled the statements made by appellant to the pharmacist were hearsay. The trial court also correctly ruled that the statements were not a part of the res gestae. Statements within the res gestae exception are those simultaneously uttered at the time of the occurrence, transaction or accident at issue. Arnold v. State, (1978) Ind.App., 383 N.E.2d 461.

In determining whether or not the statements in the case at bar were a part of the res gestae it is prudent to inquire if the "circumstances of the case were such to preclude the possibility of a shrewd and self-calculated answer". Arnold, supra, 383 at 463.

In the case at bar, appellant sought to introduce through the pharmacist his exculpatory statements during the conversation between Meister and him as revealed by his improper offer to prove. If the contents of the discussion had been admitted, the State would have been placed in the untenable position of being unable to cross-examine the declarant, here the appellant. The possibility of appellant's response being shrewd, calculated and self-serving is extremely high.

This Court was faced with a very similar situation in the case of Cain v. State, (1973) 261 Ind. 41, 300 N.E.2d 89. In that case, Justice Arterburn thoroughly deals with the factual situation wherein the trial court

sustained objections to hearsay remarks similar in nature to those in the case at bar. After reciting the facts, Justice Arterburn stated:

"The statements are also 'self-serving' (i.e. tending toward establishing the position of a party-declarant) and are deemed to be too inherently unreliable to be admitted. The application of this principle in criminal cases is well-established in this state and many others. The principle applies to statements made both prior to and subsequent to the act for which the statements are offered as evidence about the intent to do said act. Thus, in an Indiana prosecution for larceny, an offer by the defendant to prove statements negativing an intent to steal made after the larceny occurred was rejected. In affirming, this Court said:

'... the excluded statements were no part of the res gestae; but were in the nature of self-serving declarations, which were open to the suspicion of being part of a hastily formed plan of defense.'

"*Spittorff v. State* (1886), 108 Ind. 171, 174, 8 N.E. 911, 913; *accord. Durst v. State* (1920), 190 Ind. 133, 128 N.E. 920."

Judge Arterburn goes on to state that to permit such declarations in evidence on behalf of a defendant would be to allow him to make evidence for himself. He points out this would be against all principle and productive of great evil.

We hold the trial judge did not abuse his discretion in excluding the pharmacist's testimony.

■ Appellant argues the caption "Ruben Hernandez a/k/a Louis Rodrigus" on the charging information, final instructions and verdict forms prejudiced the jury. However, we deem the issue waived because he failed to object to the captions during trial. Allegations of error not raised at trial are waived for purposes of appellate review. *Whitlock v. State,* (1981) Ind., 426 N.E.2d 1292.

■ Appellant claims the evidence was insufficient to support the convictions of forgery and attempted possession of a controlled substance. Appellant contends the evidence to support a finding of intent to defraud was inadequate. Under our standard of review, we will not reweigh the evidence nor judge the credibility of witnesses. *Williams v. State,* (1980) Ind., 406 N.E.2d 241.

■ Even where evidence is circumstantial in nature, we need not find it to be adequate to overcome every reasonable hypothesis of innocence. We need only find that a reasonable inference may be drawn from the evidence presented which supports the finding of the trial court. *Eaton v. State,* (1980) Ind., 408 N.E.2d 1281.

■ Contrary to appellant's allegation, the record as above set out establishes sufficient facts to support the verdict of guilty on both Counts I and II.

■ Appellant claims the trial court erred in giving the State's tendered preliminary and final instruction numbered four. He argues the instruction impinged upon the right of the jury to decide all issues of law and fact in criminal cases as guaranteed by the Indiana Constitution, Article 1, § 19. However, this assertion is not consistent with the objection made during the trial. Appellant's objection during trial was the instruction was an incorrect statement of the law because it allegedly indicated proof "less than beyond a reasonable doubt was sufficient to convict." Appellant may not state one reason for objection at trial and then rely upon a differing objection on appeal. *Phelan v. State,* (1980) Ind., 406 N.E.2d 237.

■ Appellant claims the court erred by allowing the prosecutor to read *Lewis v. State,* (1976) 169 Ind.App. 172, 346 N.E.2d 754 to the jury during the State's final argument. He now claims reading of the case, when combined with other errors, constituted prejudicial error because it improperly influenced the jury. However, defense counsel objected first to the partial reading of *Lewis.* When the prosecutor agreed to read the case in full, defense counsel then objected on the grounds that the State's

remarks on rebuttal should be limited to the points made by defense counsel during final argument. This Court has held on several occasions that reading from decisions to the jury is proper in final argument so long as it is clear that the prosecutor is reading from or referring to a separate case, so as to not mislead or confuse the jury. *Griffin v. State,* (1981) Ind., 415 N.E.2d 60, 65.

■ Appellant claims the trial court erred in admitting non-authenticated Michigan court records in the habitual phase of his bifurcated trial. He argues the record was not properly authenticated pursuant to I.C. § 34–1–18–7. Appellant bases his allegation of insufficient authenticity on the lack of a judicial certification of the clerk's status, no certification that the attestation was in due form and no judicial seal.

Indiana Trial Rules of Procedure, Trial Rule 44(A)(1) reads in part:

> "(1) Domestic. An official record kept within the United States, or any state, district commonwealth, territory, or insular possession thereof ... may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy. Such publication or copy need not be accompanied by proof that such officer has the custody."

Trial Rule 44(C) states that the rule does not prevent proof of official records by other means authorized by law. The methods of authentication provided by Trial Rule 44 are alternative to other methods, including I.C. § 34–1–18–7. Through Criminal Rule 21, Trial Rule 44 is applicable to criminal trials. *Eldridge v. State,* (1977) 266 Ind. 134, 361 N.E.2d 155. An order of probation from Berrien County, Michigan, was certified as being a true copy of the original record on file in the court by the Clerk of the court which complied with Trial Rule 44(A)(1).

■ We hold the trial court did not err in admitting the Michigan court records in evidence.

■ Similarly, the trial court did not err in admitting State's Habitual Exhibit 5

which was a copy of fingerprints. The identification and records officer of the Berrien County Sheriff's Department certified the copies were fingerprints known by him to belong to Ruben Hernandez.

Appellant claims the trial court erred by admitting his testimony given during a bond reduction hearing. At that hearing, defense counsel called appellant to the witness stand. Appellant stated he had been previously convicted of two offenses. Appellant relied on *Williams v. State,* (1981) Ind., 419 N.E.2d 134 to support his proposition that during an habitual criminal trial, in its case-in-chief, the State is precluded from using testimony given by the accused in earlier proceedings whether from the underlying felony trial itself or another pretrial proceeding connected with the case including a bond reduction hearing. Appellant's reliance on *Williams* is misplaced.

In that case, the prosecutor's motion to dismiss the habitual criminal charge was granted after the jury returned a guilty verdict on the underlying robbery count. Appellant's motion to dismiss, made during trial, was denied. He contended the sole purpose of the habitual criminal charge was to discourage him from taking the witness stand. Had appellant testified on his own behalf, he would have been subject to impeachment by his lengthy criminal record, and thereby, provide evidence to convict him of the habitual criminal count. We held appellant's dilemma, acquitting himself upon the robbery charge and convicting himself on the habitual offender charge, to be artificial. We reasoned in *Williams, supra,* at 137:

> "If the defendant chooses to testify, and the jury acquits him, there is no habitual offender phase of the proceeding. If he is convicted, the prosecutor bears the same burden of proving the defendant's habitual offender status as if the defendant had not testified and had not been impeached by his criminal record. There is no merit to the defendant's contention."

■ We do not interpret our holding in *Williams* to prohibit introduction of a judi-

cial confession made during a pretrial hearing which does not otherwise require suppression. Rather, *Williams* reiterates that the State is required to carry the burden of proving two prior unrelated felony convictions in the habitual offender phase of the bifurcated proceedings whether or not such evidence was produced during the substantive felony trial.

█ Additionally, appellant claims he was prejudiced by the admission of the bond reduction hearing testimony because there was no other independent evidence of two prior unrelated felony convictions. However, the record contains an order of judgment for probation from the Circuit Court of the County of Berrien in Michigan and an order suspending sentence placing defendant on probation from the 92nd Judicial District Court, Hedalgo County, Texas. These documents support the habitual criminal finding.

█ Appellant claims the introduction of his testimony at the bond reduction hearing contravenes the recent United States Supreme Court ruling of *Estelle v. Smith*, (1981) 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359. However, *Estelle* is distinguishable from the case at bar. In *Estelle*, the United States Supreme Court held the testimony of a physician who had been ordered by the trial court to conduct a pre-trial competency examination regarding the likelihood of the defendant to commit future offenses introduced during the sentencing phase of the bifurcated trial was violative of Smith's Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Smith's counsel was unaware of the court ordered competency examination and the intended appearance of the psychiatrist at the death phase of the proceeding. Smith was not previously warned that his recantation of the crime could be used against him during the penalty phase of the trial. The psychiatrist's testimony directly related to one of three questions which, if answered affirmatively, triggered a mandatory death penalty.

In the case at bar, appellant's admissions during the bond reduction hearing were elicited by his own defense counsel. The hearing was occasioned by appellant's own motion. As noted above, independent evidence in the form of court orders of judgment were introduced into evidence to prove the habitual criminal count. We find no error.

█ Appellant claims the trial court erred by instructing the jury as follows: "You are hereby instructed that the crime of Attempted Possession of Heroin is a felony under the law of Indiana and was a felony at all times during 1978 and 1979."

He argues the instruction lacked evidentiary support and invaded the province of the jury to determine facts and law. This Court has held it is proper for the trial court to take judicial notice of the law and to so instruct the jury. *Skaggs v. State*, (1973) 260 Ind. 180, 293 N.E.2d 781; *Griffin*, *supra*. The trial court did not err in giving the above instruction.

█ Appellant attacks the finding that he is an habitual offender with three arguments. He concedes the statute is constitutional on its face but claims it is unconstitutional as applied to him. Appellant's prior felony convictions were forgery of a $27.00 check in 1961 and attempted possession of heroin in 1978. He claims the thirty-two (32) year sentence for his present forgery conviction is grossly disproportionate to the offense and constitutes cruel and unusual punishment in violation of the Indiana Constitution, Article 1, § 16 and § 18 and the Eighth Amendment to the Constitution of the United States. Section 16 requires all penalties be proportioned to the nature of the offense. Section 18 mandates the penal code be based on principles of reformation, not vindictive justice.

In *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382, the United States Supreme Court held a mandatory life sentence imposed upon the defendant pursuant to an habitual offender statute did not constitute cruel and unusual punishment under the Eighth Amendment. That

appellant convicted of fraudulent use of a credit card to obtain $80.00 of goods, forgery of a $28.36 check and obtaining $120.75 by false pretenses, also argued the punishment was grossly disproportionate to the three property-related felonies forming the basis for his mandatory life sentence. The United States Supreme Court stated at 445 U.S. at 275–6, 100 S.Ct. at 1139–40, 63 L.Ed.2d at 391–2:

"In an attempt to provide us with objective criteria against which we might measure the proportionality of his life sentence, Rummel points to certain characteristics of his offenses that allegedly render them 'petty.' He cites, for example, the absence of violence in his crimes. But the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or punishing a particular criminal .... Additionally, Rummel cites the 'small' amount of money taken in each of his crimes. But to recognize that the State of Texas could have imprisoned Rummel for life if he had stolen $5,000, $50,000, or $500,000, rather than the $120.75 that a jury convicted him of stealing, is virtually to concede that the lines to be drawn are indeed 'subjective,' and therefore properly within the province of legislatures, not courts.

\*    \*    \*    \*    \*    \*

"In this case, however, we need not decide whether Texas could impose a life sentence upon Rummel merely for obtaining $120.75 by false pretenses. Had Rummel only committed that crime, under the law enacted by the Texas legislature he could have been imprisoned for no more than ten years. In fact, at the time that he obtained $120.75 by false pretenses, he already had committed and had been imprisoned for two other felonies, crimes that Texas and other States felt were serious enough to warrant significant terms of imprisonment even in the absence of prior offenses. Thus the interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts shown that they are simply incapable of conforming to the norms of society as established by its criminal law. By conceding the validity of recidivist statutes generally, Rummel himself concedes that the State of Texas, or any other State, has a valid interest in so dealing with that class of persons."

We find there is no constitutional infirmity in the application of the habitual offender statute to appellant in this case.

■ Appellant argues the habitual offender statute is based upon the same criteria as it was prior to the enactment of the current penal code. Under the previous code, appellant contends "a felony was a felony" which has been eradicated by the present penal code which creates A, B, C and D felony classifications. We perceive no difference in the codes with respect to "felonies" for the purpose of the habitual offender statute. A felony, no matter its classification under the code, is a felony not a misdemeanor or infraction. Appellant's contention is without merit.

Appellant, quoting *Funk v. State,* (1981) Ind., 427 N.E.2d 1081, 1086, claims some evidence that he was both confined and had received rehabilitation for each conviction is required:

"We reaffirm our holding in *Wise* [*Wise v. Stak,* (1980) Ind., 400 N.E.2d 114], *supra,* and hold the statute does not punish for a status but provides for an enhanced punishment because of the ineffectiveness of prior confinement and rehabilitative efforts."

■ Neither the statute nor precedent cases require the trial court to find prior confinement or rehabilitative efforts have been ineffective before imposing the thirty year enhancement. The statutory provision explicitly requires the State to prove two prior unrelated felony convictions. "The sentence takes into account defendant's prior criminal activity and the effect of prior convictions and punishments." *Wise v.*

*State,* (1980) Ind., 400 N.E.2d 114. To more severely penalize those whose criminal activities have not been deterred by former convictions is the purpose underlying the enhancement. *Funk, supra.* No finding other than that of two prior unrelated felony convictions is required. The trial court did not err.

Appellant claims I.C. § 35–4.1–4–7, which lists aggravating and mitigating circumstances the trial court may consider in its discretion when sentencing a defendant as well as several mandatory considerations, is at cross-purposes with the mandatory thirty year sentence enhancement provided by the habitual offender statute. Appellant's presumptive five year sentence for forgery was reduced by the trial judge to two years. He argues the court's finding of mitigating circumstances and consequent sentence reduction is vitiated by the mandatory term.

■ The controlling statutes are explicit in terms of the trial court's discretion in sentencing. I.C. § 35–50–2–6 provides the presumptive five year term may be augmented or reduced by three years if in the court's discretion mitigating or aggravating circumstances exist pursuant to but not limited by I.C. § 35–4.1–4–7. However, in accord with I.C. § 35–50–2–8, the trial court enjoys no discretion in sentencing the habitual offender with one exception. The trial court may subtract up to twenty-five (25) years from the thirty (30) year fixed term if the court determines ten (10) years or more have elapsed between the date the person was discharged from probation, imprisonment or parole for the last prior unrelated felony conviction and the date he committed the felony for which he is being sentenced. We hold the trial court did not err in excluding mitigating factors from its consideration in sentencing appellant as an habitual offender.

■ Appellant claims he was denied due process by the court's enhancement of his sentence without finding that his prior confinements and attempted rehabilitation were ineffective. In view of our above holding, we find there was no error in this regard.

Appellant claims the evidence was insufficient to support the habitual offender finding. He argues the documents and the trial court's failure to make findings that prior confinements and rehabilitative efforts were ineffective leaves the record inadequate to support the thirty (30) year enhancement. Our resolution of the issues previously raised disposes of appellant's claim here.

■ We note *sua sponte* the language the trial judge used in the commitment is incorrect. One convicted of a crime and found to be an habitual criminal is not sentenced separately for being an habitual criminal. Under the statute, the defendant receives an additional thirty (30) years for the instant crime because he has been found to be an habitual criminal. It is imperative to understand the difference. If the status of being an habitual criminal were to be considered a separate crime, conviction would be unconstitutional as double jeopardy. When status permits enhancement of the penalty for the instant crime, no such impairment exists. To punish for the status of habitual criminal would also violate the Eighth Amendment to the United States Constitution. *Funk, supra.* There are not, therefore, two sentences to be served consecutively but one sentence for the crime of forgery, two years, to which has been added thirty (30) years. The sentence is thus one sentence totaling thirty-two (32) years.

The cause is therefore remanded to the trial court with instructions to correct the judgment and to issue a corrected commitment to the Department of Correction. On all other issues the trial court is affirmed.

HUNTER, DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result without opinion.