**Michael CLAY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1281S352.

Supreme Court of Indiana.

Oct. 6, 1982.

LeRoy K. New, Carmel, for appellant.

Linley E. Pearson, Atty. Gen., Carmen C. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Michael Clay, was convicted by the trial court of attempted murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.) and Ind.Code § 35–41–5–1 (Burns 1979 Repl.), attempted robbery, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) and Ind. Code § 35–41–5–1, *supra,* and carrying a handgun without a license, Ind.Code § 35–23–4.1–3 (Burns 1979 Repl.). The court also found that due to his prior criminal record, defendant was an habitual offender. For his respective crimes, he was sentenced to the Indiana Department of Correction for concurrent terms of thirty years, thirty years, and one year; his sentence was enhanced by an additional thirty years by virtue of his status as an habitual offender. In his direct appeal, he presents the following issues for our review:

1. Whether the evidence was sufficient to support the jury's conclusion that he was guilty of attempted murder, attempted robbery, and carrying a handgun without a license;

2. Whether the trial court contravened the dictates of Ind.Code § 35–4.1–5–1 (Burns 1979 Repl.) when it permitted the state to introduce certified copies of prior judgments at the habitual offender hearing; and

3. Whether the court erred when it permitted a fingerprint expert to compare fingerprints taken from defendant with those which appeared on documents concerning prior convictions of defendant.

The record reveals that on the morning of September 19, 1980, defendant and Larry Colgrove, an employee of the Triangle Market, engaged in a gun battle inside the premises of the store located at 600 Massachusetts Avenue in Indianapolis, Indiana. Both men were injured in the exchange of gunfire. Defendant's claim that he acted in self-defense was rejected at trial.

I.

Defendant maintains the evidence is insufficient to support the fact-finder's conclusion that he was guilty of attempted murder, attempted robbery, and carrying a handgun without a license. He asserts there was no evidence to support the conclusion that he "acted with the culpability required for commission of the crime" and engaged in conduct which constituted "a substantial step toward commission of the crime," as necessary to sustain the convictions for attempted murder and attempted robbery. Ind.Code § 35–41–5–1, *supra.* His challenge to the conviction for carrying a handgun without a license is predicated on the argument that the evidence does not reveal either that he possessed the handgun admitted at trial or that he lacked a license to carry it.

 It is well settled that when this Court is confronted with a challenge to the sufficiency of the evidence, we may not weigh the evidence nor judge the credibility of witnesses. Rather, we are required as an appellate tribunal to examine the evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences which may be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion that defendant was guilty beyond a reasonable doubt, it will not be disturbed. *Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776. We apply this standard whether the evidence is direct or circumstantial in nature. *Easley v. State, supra; Ruetz v. State,* (1978) 268 Ind. 42, 373 N.E.2d 152.

Colgrove testified that at approximately 9:20 a. m. on September 19, 1980, he was counting money and canceling food stamps on the top of a milk cooler at the rear of the Triangle Market. According to Colgrove, he saw the defendant enter the store; Colgrove's suspicions were aroused by the fact that although defendant's clothes were clean, a soiled towel was hanging from his back pocket. Something "just didn't quite fit," Colgrove testified, so he watched the defendant as he first went to a soft drink cooler at the rear of the store, then returned to the front of the store. When defendant again made his way to the soft drink cooler at the rear of the store, Colgrove obtained and cocked a handgun which he kept in his work area.

According to Colgrove, he then assumed a position at the end of the meat counter where he was partially obscured from defendant's vision. Defendant then turned away from the soft drink cooler, still without any merchandise in hand, and began walking in Colgrove's direction. As he reached a point approximately six to eight feet from Colgrove, he reached into his back pants pocket and began to withdraw an object. Colgrove testified that he was in fear for his life "just as soon as I saw enough of it to know it was a gun." Colgrove raised his gun and shot the defend-ant, who returned the fire, shooting Colgrove twice. Colgrove fell to the floor while defendant fled.

On cross-examination, Colgrove conceded that defendant never asked him for money or stated that "it was a robbery." Witness William Robinson, however, stated that he confronted defendant in an alley outside the store, where defendant was staggering and crying for help. Defendant fell to the ground as Robinson reached him. According to Robinson, he asked defendant: "You don't mean to tell me you tried to rob that market?" Defendant's response, Robinson testified, was "Yes."

Defendant testified that the discussion between himself and Robinson was limited to the location and nature of his wounds. He also testified that he shot Colgrove because he was "scared" in that Colgrove had already shot him "for no reason." He denied that he was withdrawing his gun before Colgrove initiated the shooting. He also stated that once outside the store, he threw his gun under a car.

Police investigators who were called to the scene recovered a handgun from underneath a vehicle parked outside the market. The handgun was admitted into evidence.

 This evidence is sufficient to support the fact-finder's conclusion that defendant was guilty of attempted robbery. By defendant's own admission immediately after the incident, he was acting with intent to rob the store; although he denied his statement at trial, his admission is corroborated by the evidence of his suspicious conduct within the store immediately prior to the gun battle. Likewise, defendant's presence in the store and possession of a handgun constitute a "substantial step" toward the commission of a robbery. Ind. Code § 35-41-5-1, *supra. Zickefoose v. State,* (1979) Ind., 388 N.E.2d 507. The commission of the substantial step toward the crime and the existence of the intent requisite to the offense were simultaneous; the evidence supports the fact-finder's conclusion that defendant was guilty of attempted robbery. *Cole v. State,* (1980) Ind., 403 N.E.2d 337; *Zickefoose v. State, supra.*

Similarly, defendant's conviction for attempted murder is sustained by the evidence. To be sure, the record does not indicate that prior to the moment when Colgrove initiated the gunfire, defendant necessarily possessed the intent to murder; nonetheless, human experience has established as common knowledge the fact that in the commission of a robbery, "victims may resist, police or bystanders may intercede." *Moon v. State,* (1981) Ind., 419 N.E.2d 740, 742. Defendant entered the store armed with a deadly weapon. Once Colgrove had fired a shot at defendant, he shot Colgrove twice in the chest. The use of a deadly weapon in a manner likely to cause death or great bodily harm may be sufficient to establish a defendant's intent to commit murder. *Scott v. State,* (1980) Ind., 413 N.E.2d 902; *Zickefoose v. State, supra.* Likewise, it is well established that dependent upon the circumstances, the intent to murder may occur as instantaneously as successive thoughts. *Morris v. State,* (1979) Ind., 384 N.E.2d 1022; *Rogers v. State,* (1979) Ind., 383 N.E.2d 1035. The evidence is sufficient to support the jury's conclusion that defendant's possession and use of a handgun constituted a substantial step toward the commission of murder which was coupled with the intent requisite to the crime. *Scott v. State, supra; Zickefoose v. State, supra.*

We also find the evidence sufficient to support defendant's conviction for carrying a handgun without a license. Defendant and Colgrove both testified he had a handgun in his possession in the Triangle Market. Defendant also testified he tossed the handgun under a vehicle outside the store; a handgun was retrieved from underneath a car outside the Triangle Market. This evidence, standing alone, is sufficient to support the conviction. *Wilson v. State,* (1975) 164 Ind.App. 665, 330 N.E.2d 356. Defendant has argued the evidence was insufficient in that the state failed to produce evidence of the serial number of the gun or any lack of a license to carry the gun. The argument is meritless. The burden of prov-

ing the existence of a license to carry the handgun or an exception to the licensing requirement was on defendant. Ind.Code § 35–23–4.1–19 (Burns 1982 .Supp.). The evidence was sufficient to support defendant's conviction.

## II.

At the habitual offender phase of the proceedings, the state sought to introduce various certified documents as proof of defendant's two prior felony convictions. Over defendant's objection that the documents were inadmissible because the information therein was inadequate to satisfy the requirements of Ind.Code § 35–4.1–5–1 (Burns 1979 Repl.), the documents were admitted.

Defendant here renews his contention that the various documents were inadmissible. Concomitantly, he asserts that the evidence was insufficient to support the conclusion that he qualified for status and sentencing as an habitual offender.

■ We disagree that proof of the prior felony convictions necessary to sustain an habitual offender finding under Ind.Code § 35–50–2–8, *supra,* must be tendered in a form which strictly complies with Ind.Code § 35–4.1–5–1, *supra.* Defined in the statute are the formal requisites of post-conviction orders of commitment, including the judgment and sentence imposed. Detailed in subsection "b" of the statute, as it existed at the time of defendant's habitual offender proceedings,[1] was the information required to be contained in the "judgment":

"(b) The judgment must include:
"(1) the crime for which the convicted person is adjudged guilty;
(2) the period, if any, for which the person is rendered incapable of holding any office of trust or profit;
(3) the amount of the fines or costs assessed, if any, whether or not the convicted person is indigent, and the method by which the fines or costs are to be satisfied;

1. Pursuant to Acts 1981, P.L. 295, § 1, subsection "b," as quoted in the text, has been de-

nominated subsection "c." See Ind.Code § 35–4.1–5–1 (Burns 1982 Supp.).

(4) the amount of credit, including credit time earned, for time spent in confinement before sentencing; and

(5) the amount to be credited toward payment of the fines or costs for time spent in confinement before sentencing.

"The judgment may specify the degree of security recommended by the court." Ind.Code § 35–4.1–5–1(b), *supra.*

The substance of subsection "b" was not appended to the statute until 1975. Acts 1975, P.L. 331, effective July 1, 1975.

Here, the defendant's alleged prior felonies occurred in 1974, 1973, and 1965. Were the statute dispositive of the form of proof which was admissible to establish the existence of the alleged felony convictions, the state would be precluded from introducing the evidence where the trial court had not complied with the statutory provisions, even though the requirements did not exist at the time. That would defy the letter and spirit of Ind.Code § 35–50–2–8, *supra,* wherein it is provided that any "prior unrelated felony conviction" may be utilized to establish habitual offender status, notwithstanding any remoteness in time. *Underhill v. State,* (1981) Ind., 428 N.E.2d 759. Defendant's contention must fail.

█ To prove the allegation that defendant had been convicted of a felony in 1974, the state introduced certified copies of a charging instrument, as well as order book entries and the commitment order relative thereto. Three counts had been charged against "Michael Leon Clay" in 1974: (1) assault with intent to kill; (2) carrying a handgun in public without a license; and (3) drawing a weapon upon a police officer. The order book entries reveal that defendant and the state executed a plea agreement whereby the state dismissed Counts I and III in exchange for defendant's plea of guilty to Count II as charged. In Count II, the state had charged that defendant had "feloniously" carried a handgun in public without a license. Pursuant to Ind.Code § 35–23–4.1–18(c) (Burns 1975), the statute then in effect, any person who violated the provisions of Ind. Code § 35–23–4.1–3 (Burns 1975), which prohibited the conduct with which defendant was charged, was "guilty of a felony" on the second offense and could be sentenced to any determinate period between one and ten years. The record reveals the trial court accepted the plea, and pursuant to the commitment order, imposed a determinative five-year sentence upon defendant. This evidence established defendant's conviction for a felony in 1974.

█ Likewise, certified documents offered by the state were sufficient to establish that he was convicted of a felony in 1973. These documents consisted of the charging instrument, the commitment order, and order book entries. Pursuant to the charging instrument "Michael Clay" was charged in Count I with theft of personal property with a value of $300; in Count II, he was charged with carrying a handgun in public without a license. The order book entry reveals that pursuant to a plea agreement, the defendant pled guilty to theft in a sum less than $100 and, as per the commitment order, was sentenced to a term of three hundred sixty days at the Indiana State Farm.

Pursuant to Ind.Code § 35–17–5–12 (Burns 1975), theft in a sum less than $100 was a misdemeanor upon the first conviction for a theft offense. If a person had previously been convicted of a felony, however, a conviction for theft in a sum less than $100 constituted a felony, punishable by imprisonment in the state prison for a period of one to ten years. Ind.Code § 35–17–5–12(1) and (6), *supra.*

The record reveals the sentence imposed on defendant was the result of the trial court's decision to accept the state's recommendation made as part of the plea agreement. As hereinafter discussed, however, the record reveals that defendant had a prior felony conviction. Consequently, his offense in 1973 was a conviction for which he *might* have been imprisoned for a period in excess of one year; it therefore constituted a felony for purposes of Ind.Code § 35–50–2–8, *supra.* See Ind.Code § 35–50–2–1 (Burns 1979 Repl.); *Bernard v.*

*State,* (1967) 248 Ind. 688, 230 N.E.2d 536; *Stevenson v. State,* (1975) 164 Ind.App. 199, 327 N.E.2d 621. Defendant's 1973 conviction was probative evidence of his habitual offender status. *Underhill v. State, supra; Wise v. State,* (1980) Ind., 400 N.E.2d 114.

■ The various documents tendered by the state to prove defendant's alleged 1964 felony conviction consisted of the charging instrument and order book entries relative thereto. Via affidavit, "Michael Leon Clay" was charged with theft of an automobile, a felony under the statute then in effect. Ind.Code § 35–17–5–12(5)(d) (Burns 1975). The order book entries reveal defendant originally entered a plea of not guilty, then withdrew that plea and entered a plea of guilty. The court accepted the plea and sentenced defendant to a period of sixty days at the Indiana State Farm.

Defendant maintains that inasmuch as he was only sentenced to a period of sixty days incarceration, there is no proof that he was convicted of a felony as charged. The record reveals, however, that defendant was sentenced "under the minor statute." We confronted this argument in *Rodgers v. State,* (1981) Ind., 422 N.E.2d 1211, 1215, in the context of virtually identical evidence:

"[T]he text of the charging instrument, wherein it was alleged that defendant 'committed the crime of theft in that he knowingly, unlawfully, and feloniously exerted unauthorized control over a certain motor vehicle of TOM WOOD PONTIAC, INC.' clearly established that the crime charged was theft of a motor vehicle. As the state concedes, the text simply reveals the scrivener's erroneous interposition of an extra "17" into the codification of theft of a motor vehicle, as it then existed. Ind.Code § 35–17–5–3(1)(a) (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24).

"Under the code then in effect, theft of a motor vehicle was punishable by imprisonment for a period not less than one year. Ind.Code § 35–17–5–12(5)(d) (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24).

Notwithstanding the clerical error, it cannot be doubted that the offense charged was a 'felony.'

"Defendant maintains that it was not proven he was convicted of a felony, however, for he was only sentenced to a period of six months at the Indiana State Farm. The commitment papers belie his argument. Therein, it was expressly stated that he was found guilty of 'COUNT I—O.A.P.A. (VEHICLE)' and that he was 'SENTENCED UNDER MINOR STATUTE.' Chapter 3 of the criminal code then in effect, entitled 'Sentencing of Minor,' invested trial courts with discretionary power to sentence persons under 'the full age of twenty-one years' to less than one year at the State Farm for a felony conviction. Ind. Code § 35–8–3–1 (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24).

\* \* \* \* \* \*

"The evidence points unerringly to the conclusion that defendant was convicted of a felony in 1976. The trial court did not err in denying defendant's motion to dismiss on this basis." [Footnote omitted.]

As per *Rodgers,* defendant's contention must be rejected.

### III.

■ Defendant also maintains that the trial court erred in admitting testimony of Robert Worland, Indianapolis police officer, wherein he compared fingerprints taken from a "Michael Clay" at the State Farm in 1964, fingerprints taken from a "Michael Clay" at the Department of Correction's Diagnostic Center in 1974, and fingerprints taken from defendant in the course of the instant proceedings. At trial, defendant objected to the admission of the testimony for the reason that Worland, as per his own admission, had no "personal knowledge" of the fingerprints offered from the State Farm or the Diagnostic Center in that he had not been present when the prints were taken. He here renews that contention.

Defendant, we note, does not challenge the admissibility of the fingerprint exhibits taken at the State Farm or the Diagnostic Center. Those documents were admissible as official records certified by the "keeper" of the State Farm records and the Assistant Director of the Diagnostic Center. Ind.R. Tr.P. 44; *Hernandez v. State,* (1982) Ind., 439 N.E.2d 625. Nor does he challenge Worland's status as an expert witness; the record reveals he had received primary, secondary, and advanced fingerprint training at FBI schools and managed the latent fingerprint section of the Indianapolis Police Department.

Given the admissibility of the fingerprint exhibits and the expertise of the witness, the trial court did not err in overruling defendant's objection and permitting Worland to testify as to his comparative analysis of the various fingerprints. A fingerprint expert's opinion is based on the similarities between the prints compared; presence at the time the exhibits were made is irrelevant to that scientific process. Here, based on his analysis, Worland testified that the fingerprints taken from "Michael Clay" in 1974 and 1964 were from the same Michael Clay before the court. The evidence was properly admitted and was sufficient to establish defendant's identity as the person who had been convicted of felonies in 1974 and 1964.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.