## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua A.B. Weathers, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 29, 2016 <br><br> Court of Appeals Case No. <br> 79A04-1605-CR-1134 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Steven P. Meyer, Judge <br><br> Trial Court Cause No. <br> 79D02-1601-F5-11 |

**Crone, Judge.**

# Case Summary

Joshua A.B. Weathers appeals his convictions for level 6 felony neglect of a dependent and level 6 felony possession of a syringe. Weathers challenges the propriety of the State's closing argument and also asserts that the State presented insufficient evidence to support his possession of a syringe conviction. Finding that he has waived his challenge to the State's closing argument and that the evidence was sufficient to support his possession of a syringe conviction, we affirm.

# Facts and Procedural History

On January 23, 2016, Weathers, his girlfriend Emily Sanchez, and their nine-month-old daughter spent almost the entire day in a bedroom that they shared in the home of Sanchez's mother, Marci Burnett. Burnett believed that Weathers and Sanchez were drug addicts, and she did not think that Weathers was a good influence on her daughter. At some point, Weathers left for an hour or two and returned before 10:00 p.m. Shortly after he returned, Burnett could hear the baby crying inside the bedroom. When the crying did not stop, Burnett knocked on the adjoining wall of the bedroom to see if Weathers and Sanchez were asleep. The baby continued to cry, so Burnett tried calling out to Weathers and Sanchez. Again getting no response, Burnett tried knocking and listening at the bedroom door. When there was still no response, Burnett opened the door.

[3] Burnett entered the room and observed the crying baby in the portable crib. Sanchez was hunched over on the floor and unresponsive. Weathers was standing a few feet away from Sanchez. He stood "with his legs kind of spread apart to balance himself, and he was kind of hunched over with his eyes closed." Tr. at 33. He was wearing boxer shorts, but his pants were pulled down around his ankles. He was also not responding. Burnett yelled at Weathers until he seemed to "wake up." *Id*. at 34. Weathers told Burnett that "they" had taken Suboxone and that Sanchez had used heroin. *Id*. at 35.

[4] Burnett called 911 and removed the baby from the bedroom. West Lafayette Police Department Lieutenant Arthur Choate arrived at the scene and found Weathers and Sanchez in their bedroom. Weathers told Lieutenant Choate that he had taken Suboxone and that Sanchez had injected heroin. Lieutenant Choate observed an orange syringe cap and the corner of a plastic baggie with white residue in plain view. Lieutenant Choate asked Weathers where the syringe was, and Weathers, who appeared to Lieutenant Choate to be intoxicated, said that he did not know. At the time, Weathers was leaning over Sanchez and "trying to move her and do some stuff with her." *Id*. at 49. Lieutenant Choate asked Weathers to stop and to leave the room.

[5] Sergeant Stason Wiete arrived on the scene and administered a procedure called "the sternum rub" to try to wake Sanchez. *Id*. at 85. Sergeant Wiete observed an orange syringe cap on a piece of furniture nearby, and he also saw that Sanchez had "track marks" on her hands. *Id*. After Sanchez woke up and

the officers were able to get her off the floor, Sergeant Wiete discovered "a syringe with a needle on it underneath her body." *Id.* at 86.

[6]  Sergeant Wiete later interviewed Weathers, and Weathers told the officer that Sanchez had injected heroin, but that it was too much for her. He admitted that he watched her inject the heroin and did nothing to stop her, stating, "What am I gonna do, grab her by her throat and put her down?" State's Ex. 10. Weathers stated that he had taken only Suboxone, for which he claimed to have a prescription. However, Sergeant Wiete believed Weathers to be on an opiate because his speech was slurred, his eyelids were droopy, and he was lethargic and "slow to react." Tr. at 94. In Sergeant Wiete's opinion, Weathers demonstrated "all the classic signs of intoxication of an opiate." *Id.* Regarding the Suboxone, Weathers was unable to provide officers with a prescription.

[7]  The State charged Weathers with level 5 felony possession of a narcotic drug, level 6 felony neglect of a dependent, and level 6 felony possession of a syringe.[1] The State subsequently dismissed the level 5 felony charge. Following a trial held on April 5, 2016, the jury found Weathers guilty of the remaining two charges. This appeal ensued.

---

[1] The record indicates that Sanchez was also charged with the same crimes.

# Discussion and Decision

## Section 1 – Weathers has waived any issue regarding the propriety of the State's closing argument.

[8] We begin by addressing Weathers's challenge to the propriety of the State's closing argument. Specifically, Weathers argues that the State improperly read to the jury some of the language from a proposed final jury instruction tendered by the State that the trial court had previously rejected. However, Weathers did not object to the prosecutor's closing argument, request a jury admonishment regarding the portion of the statement that he claims was improper, or move for a mistrial. It is well settled that, "[t]o preserve an issue regarding the propriety of a closing argument for appeal, a defendant must do more than simply make a prompt objection to the argument. Defendant must also request an admonishment, and if further relief is desired, defendant must move for a mistrial." *Owens v. State*, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010) (quoting *Wright v. State*, 690 N.E.2d 1098, 1111 (Ind. 1997)), *trans. denied* (2011). As Weathers did none of these things, he has failed to preserve the issue for appeal.

[9] Moreover, Weathers makes no claim that fundamental error occurred, and even had he done so, from our review of the record, we discern that no such error occurred here. *See Blaize v. State*, 51 N.E.3d 97, 102 (Ind. 2016) (fundamental error is "extremely narrow" exception to general rule that failure to object at trial constitutes procedural default precluding consideration of issue on appeal; applies only when error constitutes blatant violation of basic principles, the harm or potential for harm is substantial, and resulting error denies defendant

fundamental due process).  Weathers has waived our review of his challenge to the propriety of the State's closing argument.[2]

## Section 2 – The State presented sufficient evidence to support Weathers's possession of a syringe conviction.

[10]    Weathers next contends that the State presented insufficient evidence to support his possession of a syringe conviction.[3]  When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility.  *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015).  We look to the evidence and reasonable inferences drawn therefrom that support the conviction and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt.  *Id*.  In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it.  *Id*. at 500.

[11]    Indiana Code Section 16-42-19-18(a) provides that "[a] person may not possess with intent to: (1) violate [The Legend Drug Act]; or commit an offense

---

[2] Waiver notwithstanding, we find no error or impropriety.  Weathers claims that the trial court should have sua sponte disallowed the State from reading language from *White v. State,* 547 N.E.2d 831, 836 (Ind. 1989), to the jury regarding what factors constitute child endangerment in the context of the crime of neglect of a dependent.  However, Weathers concedes that it is proper for counsel to argue both law and facts in closing statement, *see Nelson v. State*, 792 N.E.2d 588, 593 (Ind. Ct. App. 2003), *trans. denied*, and he further concedes that our supreme court has held that reading from prior case law decisions is proper final argument so long as it is clear that the prosecutor is reading or referring to a separate case.  *Hernandez v. State*, 439 N.E.2d 625, 630 (Ind. 1982).  We note that although the trial court indeed rejected the State's jury instruction that included language from *White*, the court specifically noted that the language was a correct statement of the law, *see* Tr. at 69, and Weathers does not challenge that conclusion.  Weathers does not even attempt to explain why the language was improper or how he was prejudiced by the inclusion of the language in the State's closing argument.  Weathers has failed to demonstrate any error.

[3] Weathers does not challenge his conviction for neglect of a dependent.

described in IC 35-48-4 [offenses related to controlled substances]; a hypodermic syringe or needle or instrument adapted for the use of a controlled substance or legend drug by injection in a human being." The offense constitutes a level 6 felony. Ind. Code § 16-42-19-18(b). Specifically, the State alleged here that Weathers possessed a syringe adapted to inject heroin with the intent to commit an offense relating to controlled substances; specifically, possession of a controlled substance. Heroin is classified as a schedule I controlled substance, and Suboxone is classified as a schedule III controlled substance. *See* Ind. Code §§ 35-48-2-4(c), -8(e)(7).[4]

[12]     Weathers claims that the State presented insufficient evidence to prove that he possessed the syringe.[5] He argues that because the syringe was found underneath Sanchez, and she was the one who injected the heroin, there is no evidence that he ever personally possessed the syringe. We note that in the absence of actual possession, which is proven by direct physical control, constructive possession may support a conviction. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Constructive possession requires proof that "the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Id*. To prove intent, the State must demonstrate "the defendant's knowledge of the presence of the contraband, which may be inferred from either the exclusive dominion and

---

[4] The statute references buprenorphine. Suboxone is the trade name for a compound of buprenorphine and naloxone.

[5] Weathers concedes that there was sufficient evidence to show that the syringe was adapted to inject heroin.

control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Massey v. State*, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (citation omitted). "The capability requirement is met when the State shows that the defendant is able to reduce the contraband to the defendant's personal possession." *Id*. Proof of a possessory interest in the premises in which the contraband is found is sufficient to show the capability to maintain control and dominion over the items in question. *Id*. The defendant's possession of contraband need not be exclusive and it can be possessed jointly. *Id*.

[13] Here, the State presented evidence that the syringe was found in the bedroom that Weathers shared with Sanchez and their young baby. Weathers kept his belongings in that room, and the evidence indicated that Weathers had spent virtually the entire day in that room. Weathers admitted that he watched Sanchez inject the heroin, and Burnett observed Weathers standing with his pants down within a few feet of Sanchez shortly after she injected the heroin. A syringe cap and a baggie with white residue were located in plain view. Therefore, despite the fact that the syringe was subsequently located under Sanchez's body, it was reasonable for the jury to infer that Weathers had both the capability and the intent to maintain dominion and control over the syringe. The State presented sufficient evidence to establish Weathers's constructive possession of the syringe.

[14] Assuming that he constructively possessed the syringe, Weathers maintains that there is insufficient evidence that he possessed the syringe "with the intent to use it to inject himself with a controlled substance." Appellant's Br. at 18. However, the State was not required to prove as much. By the plain language of the statute, the State did not have to prove that Weathers intended to inject himself with a controlled substance when he constructively possessed the syringe; it simply had to prove that he intended to commit a controlled-substances crime. *See* Ind. Code § 16-42-19-18(b). As noted by the State, possession of a controlled substance is one of the offenses described in Indiana Code Section 35-48-4; specifically Indiana Code §35-48-4-7. The State presented evidence from which the jury could have reasonably inferred that Weathers intended to possess without a prescription Suboxone, a schedule III controlled substance, and that he intended to possess heroin, a schedule I controlled substance. Accordingly, the evidence was sufficient to support his conviction.

[15] Affirmed.

Riley, J., and Altice, J., concur.