Joseph A. **FIORETTI**, Appellant–
Plaintiff,

v.

**AZTAR INDIANA GAMING CO., LLC,
d/b/a Casino Aztar, and Ben McCarthy, Appellees–Defendants.**

No. 82A04–0211–CV–556.

Court of Appeals of Indiana.

June 26, 2003.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Patrick A. Shoulders, David A. Guerrettaz, Rhonda Y. Miller, Ziemer, Stayman, Weitzel & Shoulders, Evansville, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Joseph A. Fioretti appeals the entry of summary judgment for appellees-defendants Aztar Indiana Gaming Company (Aztar). Specifically, Fioretti claims that a genuine issue of material fact remains as to whether Trooper McCarthy was an employee or agent of Aztar when he caused Fioretti pain and injury during an arrest. Concluding that the trial court did not err in entering summary judgment for Aztar, we affirm.

### FACTS

The facts most favorable to Fioretti, the nonmoving party, reveal that Aztar operates a riverboat casino in Evansville. Pursuant to statutes and administrative regulations, the Indiana State Police (ISP) has officers at the casino to ensure that gaming regulations are followed by Aztar and that casino patrons comply with all laws. As part of the regulatory scheme involving the casinos, Aztar must pay the costs associated with the presence of the ISP officers, including salaries, benefits, and equipment.

On November 18, 2000, Fioretti and his mother were aboard the casino. Fioretti was summoned over the public address system to go to the upper floor of the casino. When Fioretti alighted from the elevator, Trooper McCarthy told Fioretti he was under arrest for stealing coins and placed handcuffs on him. During the handcuffing, Trooper McCarthy apparently twisted Fioretti's arms. Trooper McCarthy led Fioretti to a security room where his mother and father were waiting.

On June 16, 2002, Fioretti filed a claim against Aztar and Trooper McCarthy, seeking damages for battery, intentional infliction of emotional distress, false imprisonment, negligence, and gross negligence, alleging that Trooper McCarthy was an employee or agent of Aztar. Additionally, Fioretti sought recovery under Indiana Code section 34–24–3–1, which allows monetary recovery for the crime of criminal confinement. Fioretti also claimed that his civil rights had been violated and, thus, sought recovery under 42 U.S.C. § 1983. On April 1, 2002, Aztar moved for summary judgment, alleging that Trooper McCarthy was neither an employee nor an agent of Aztar. The trial court entered summary judgment for Aztar[1] on September 18, 2002. Fioretti now appeals.

### I. Standard of Review

We first note that when this court reviews a trial court's ruling on summary judgment.

---

1. We note that the claims against Trooper McCarthy were not disposed of on summary

judgment, it applies the same standards used by the trial court in deciding whether to affirm or reverse the trial court. *Creel v. I.C.E. & Assocs., Inc.,* 771 N.E.2d 1276, 1279 (Ind.Ct.App.2002). We will not weigh evidence but will construe the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment should be granted only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

## II. Respondeat Superior—Employee

■ Fioretti contends that the trial court erred in finding that, as a matter of law, Trooper McCarthy was not an employee of Aztar. Specifically, Fioretti asserts that Aztar is required by statute or regulations to pay for the salaries, benefits, and equipment of ISP officers assigned to its riverboat. Thus, Fioretti argues, "this relationship renders the State Police personnel assigned to Riverboat duties borrowed servants, rented from the State Police." Appellant's Br. p. 8.

Our supreme court developed a seven-factor test in determining whether a person is the employee of two employers in *GKN Co. v. Magness,* 744 N.E.2d 397, 402 (Ind.2001). Specifically, the hallmarks of a borrowed servant relationship are as follows: "(1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and, (7) establishment of the work boundaries." *Id.* Furthermore, our su-

preme court has held that "the right to exercise control over the manner and means by which the work is to be accomplished is the most important consideration." *Moberly v. Day,* 757 N.E.2d 1007, 1010 n. 3 (Ind.2001).

### A. Right to Discharge

Larry A. Qualls, Director of Security at Aztar, stated in his affidavit that "Aztar did not and does not have the authority to hire and fire the State Police." Appellant's App. p. 29. No evidence was designated by Fioretti to dispute Qualls's statement. More importantly, gaming statutes omit references to casino control over ISP officers. The statute describing the powers of the Indiana Gaming Commission (IGC) reads, in relevant part:

The commission shall do the following:

. . . .

(7) Be present through the commission's inspectors and agents during the time gambling operations are conducted on a riverboat to do the following:

(A) Certify the revenue received by a riverboat.

(B) Receive complaints from the public.

(C) Conduct other investigations into the conduct of the gambling games and the maintenance of the equipment that the commission considers necessary and proper.

Ind.Code § 4–33–4–3. Indiana Code section 4–33–4–3.5 [2] authorizes the IGC to hire agents to comply with Indiana Code section 4–33–4–3(7). Neither this statute nor section 1–14–1 of title 68 of the Indiana Administrative Code, which estab-

---

**2.** Indiana code section 4–33–4–3.5 reads as follows: "The commission may employ or contract for inspectors and agents required under section 3(7) of this chapter. The licensed owners shall, in the manner prescribed by the rules of the commission, reim-

burse the commission for the salaries and other expenses of the inspectors and agents required to be present during the time gambling operations are conducted on a riverboat."

lishes the Gaming Enforcement Section of the ISP, gives Aztar the right to discharge an ISP officer. In fact, the text of Indiana Code section 4–33–4–3(7) seems to indicate that Aztar is the IGC's primary target of surveillance. This factor weighs in favor of a finding that Trooper McCarthy was not an Aztar employee.

### B. Mode of Payment and Supplying Tools and Equipment

Fioretti notes that casinos such as Aztar, under section 1–14–2 of title 68 of the Indiana Administrative Code, are responsible for the salaries, benefits, and equipment of ISP officers assigned to the riverboats. Thus, Fioretti argues, the officers are "100% financed" by Aztar. Appellant's Br. 8.

In determining whether the payment of funds from Aztar to benefit the ISP officers constitutes a sufficient factor to raise the issue of respondeat superior, we note that section 1–14–3 of title 68 of the Indiana Administrative Code reads as follows:

(a) The [ISP] shall, through interdepartmental bill, assess the costs listed in section 2 of this rule to the [IGC]. The [IGC] will reimburse the [ISP] for the amount assessed.

(b) The [IGC] will prepare an invoice that will be sent to the riverboat licensee or riverboat license applicant. The riverboat licensee or riverboat license applicant will pay the [IGC] in the manner directed in the invoice.

Thus, the ISP officers assigned to Aztar are separated from Aztar by two governmental agencies, the ISP and IGC. The fact that the troopers are two levels removed from Aztar weighs against a finding that Trooper McCarthy was an employee or agent of Aztar. *See GKN Co. v. Magness,* 744 N.E.2d 397, 405 (Ind.2001) (holding that fact that trucking company paid plaintiff, withheld his taxes, and paid his worker's compensation insurance premiums pointed to the conclusion that plaintiff was employee of trucking company and not of general contractor, even though general contractor paid trucking company for work that was solely performed by plaintiff).

### C. Belief of the Parties

Fioretti has supplied no evidence of the intent of Aztar and Trooper McCarthy. The Qualls affidavit states that "at no time did I believe that the State Police were the agents, employees or servants of Casino Aztar," Appellant's App. p. 29, though such a statement is self-serving inasmuch as Aztar's goal is to place as much separation between itself and Trooper McCarthy as possible. Additionally, Indiana Code section 4–33–4–3, which establishes the duties of the gaming commission on board a riverboat, indicates that ISP troopers are assigned to boats to ensure that neither the riverboats nor their patrons flout Indiana law. Thus, this factor is not helpful in deciding whether Trooper McCarthy was an Aztar employee.

### D. Control Over the Means

Fioretti claims that section 8–2–22(2) of title 68 of the Indiana Administrative Code shows that Aztar has extensive control over the Troopers assigned to the riverboat. The regulation in question reads as follows:

The law enforcement and security section shall include the following:

. . . .

(2) A list of the major law enforcement tasks related to enforcement of statutory requirements pertaining to riverboat gambling.

According to Fioretti, this section allows Aztar to circumscribe the activities of the ISP troopers.

The regulation cited by Fioretti is a description of a portion of an "emergency response plan" that must be submitted to the IGC per section 8–2–3 of title 68 of the Indiana Administrative Code. In addition to "the law enforcement and security section" mentioned in section 8–2–22, the "emergency response plan" also must contain a "medical section," 68 IAC 8–2–18, and a "fire and rescue section," 68 IAC 8–2–21. When read in the context of the regulation, it is plain that the regulation does not give control of the troopers to Aztar but informs the IGC of the required law enforcement tasks *in the event of an emergency.*

Most indicative of a *lack* of control on the part of Aztar is Indiana Code section 4–33–4–3(7)(C), which allows troopers to "conduct other investigations into the conduct of the gambling games and the maintenance of the equipment that the commission considers necessary and proper." The statute shows that the IGC—through its agents, the troopers—can investigate casinos such as Aztar at any time, without Aztar's direction. This factor weighs heavily in favor of a finding that Trooper McCarthy is not an Aztar employee.

### E. Length of Employment

This factor seems to be of little use, as neither party provided any evidence of Trooper McCarthy's tenure as a trooper with this Aztar facility.

### F. Establishment of Work Boundaries

Fioretti has not presented any evidence of Aztar's ability to set work boundaries for Trooper McCarthy. Qualls, on the other hand, stated in his affidavit that Aztar "did not and could not control the means by which the Troopers performed their duties, and did not set work boundaries for the Troopers." Appellant's App. p. 29. Thus, the uncontroverted evidence shows that Aztar had no control over the establishment of work boundaries for the troop-

ers. As a result, this factor weighs in favor of a finding that Trooper McCarthy was not an employee or agent of Aztar.

### III. Respondeat Superior—Agent

Fioretti contends that the trial court erred in finding that, as a matter of law, Trooper McCarthy was not an agent of Aztar. Specifically, Fioretti claims that inasmuch as Aztar has an emergency response plan in place for law enforcement, Aztar is able to exert control over the troopers.

We first note that "an agent 'is a substitute or deputy appointed by the principal with power to do certain things which the principal may or can do.'" *Woodworth v. Estate of Yunker,* 673 N.E.2d 825, 827 (Ind.Ct.App.1996) (quoting 3 Am. Jur.2d *Agency* § 1 (1964)). "'[T]he elements of an actual agency relationship are three: manifestation of consent by the principal; acquiescence by the agent; and control exerted by the principal.'" *Id.* (alteration in original) (quoting *Hope Lutheran Church v. Chellew,* 460 N.E.2d 1244, 1247 (Ind.Ct.App.1984))

As stated in Part II.D, section 8–2–22(2) of title 68 of the Indiana Administrative Code, which requires submission of an emergency response plan, does not supply Aztar with control of the troopers but provides the IGC with information about critical tasks in the event of an emergency. Furthermore, the designated evidence fails to show that the troopers as a whole, or Trooper McCarthy in particular, consented to becoming agents for Aztar. Thus, the trial court did not err in finding that Trooper McCarthy was not an agent for Aztar.

### CONCLUSION

In light of the issues discussed, it is evident that no genuine issue of material fact remained regarding the question of

whether Trooper McCarthy was an employee or agent of Aztar. Because all relevant factors contained in the *Magness* analysis point away from an employment relationship between Aztar and Trooper McCarthy and because the designated evidence shows neither Aztar's control over Trooper McCarthy nor assent by Trooper McCarthy to an agency relationship, the trial court did not err in holding that Aztar was entitled to judgment as a matter of law.

Affirmed.

DARDEN, J., concurs.

SULLIVAN, J., concurring with opinion.

SULLIVAN, Judge, concurring.

With the exception of its reliance upon the Belief of the Parties as in Part C, I believe the majority opinion adequately and correctly evaluates the factors to determine whether McCarthy was an Aztar employee or agent.

My problem with the Belief of Parties discussion is that the affidavit of Qualls, the Security Director for Aztar, is patently self-serving. It behooves Aztar to place as much separation between itself and the trooper as possible. It should come as no surprise that Qualls said he did not believe that the State Police were the agents, employees, or servants of Aztar. Furthermore, the ISP troopers are not concerned only with the compliance with the law by "the riverboats themselves" because, as earlier noted by the majority opinion, their duties include making sure the patrons comply with the law. I do not think the Belief of the Parties factor weighs either way in our case.

Subject to the above observation, I concur.